(No. 28037.—<span style="background:black">     </span>

THE PEOPLE *ex rel.* John Toman, County Collector, Appellee, *vs.* BELMONT RADIO CORPORATION, Appellant.

*Opinion filed Sept. 19, 1944—Rehearing denied Nov. 20, 1944.*

Scott, MacLeish & Falk, (Robert S. Cushman, and John J. O'Brien, Jr., of counsel,) all of Chicago, for appellant.

Thomas J. Courtney, State's Attorney, William J. Tuohy, Richard S. Folsom, and Kirkland, Fleming,

GREEN, MARTIN & ELLIS, (JOSEPH B. FLEMING, JOSEPH H. PLECK, and EDWARD C. CALDWELL, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This case presents questions as to the validity of certain appropriation items included in the annual budget of the board of education of the city of Chicago for the year 1940. The appropriations to which objections have been filed which will be given first consideration are set forth in the budget as follows:

"SPECIAL ACCOUNTS NOT APPROPRIATED FOR ELSEWHERE—70

| Budget Index | Items of Appropriation Under Standard Accounts | Amounts Appropriated |
|---|---|---|
| | CAPITAL OUTLAY. | |
| 3-S-700 | Materials, Supplies, etc. in Connection with WPA Projects . . . . . . . . . . . . . . . . . . . . . . . . | $298,000.00 |
| 3-S-700 | Expenses of Supervision in Connection with WPA Projects . . . . . . . . . . . . . . . . . . . . . . . | 2,000.00 |

MISCELLANEOUS EXPENSES—1070

| Budget Index | Items of Appropriation Under Standard Accounts | No. | Rate Per Month | Amounts Appropriated |
|---|---|---|---|---|
| | INSTRUCTION. | | | |
| 1-J-1 | Supplies—WPA Projects . . . . . . . . . . . . . . | | | $ 31,725." |

The objection to each of said appropriations was that it was not sufficiently itemized. The county court overruled each of the objections.

The index to the budget code explains that the first number opposite each appropriation represents the fund from which the appropriation is to be paid, thus number 1 indicates it is an appropriation from the educational fund

and number 3 from the building fund. The letter "S" which follows the fund number on the appropriations for materials, supplies, etc., and expenses of supervision, etc., is the symbol for the character of the appropriation, meaning it was to be expended for "Construction and Betterments." The letter "J" opposite the fund number on the appropriation of $31,725 for "Supplies—WPA Projects" was the symbol for an appropriation for "Educational and Stationery Supplies." The number "700," following the letter "S" in the first two items, represents the function or the character of the expenses for which the appropriation is made. As applied to the two items indexed "3-S-700," the index key to the budget code would show that said items were appropriated from the building fund for "Construction and Betterments," which was a capital outlay, and the figure "700" the function or the character of the expense for which the appropriation was made. It should be noted that under the heading "Capital Outlay" in the "special accounts not appropriated for elsewhere" there are 17 items including the ones for materials, supplies, etc. and expense of supervision, which relate to appropriations from the building fund for items such as fire damages to school buildings, bulletin boards, map rails, special assessments, modernizing toilets, new boilers, and other purposes of a character to make them proper charges against the building fund. The figure "1" following the letter "J" in the appropriation for supplies means "General Studies—Instructions."

Section 135½ of the School Law (Ill. Rev. Stat. 1943, chap. 122, par. 158a,) prescribes the matters that the annual budget of a board of education shall contain. The pertinent parts are that it shall specify "(a) the several organization units, purposes, and objects for which appropriations are made, (b) the amount appropriated for each organization unit, purpose or object, and (c) the fund

from or to which each amount appropriated is to be paid or charged."

In determining whether the items in question are budgeted to meet these requirements, it is proper to consider the information that may be acquired by pursuing the subject through the index to the budget code. (*People ex rel. Lindheimer* v. *Hamilton*, 373 Ill. 124; *People ex rel. Gill* v. *White*, 367 Ill. 415.) The code thus interpreted as to the two items "3-S-700" means that the board of education appropriated $298,000 from the building fund to pay for materials, supplies, etc. purchased as a capital outlay for construction and betterment of schools, the same to be expended on WPA projects, and that the other was to be expended in supervision of work carried on as WPA projects. Appellee says the latter appropriation of $31,725 would mean it was an appropriation from the educational fund, that it is for educational and stationery supplies to be used in conjunction with instruction in general studies taught in buildings or facilities constructed with the assistance of the Works Progress Administration. The general purpose of the first two appropriations is clearly designated as charges against the building fund. The budget also shows that they are capital outlay for the purchase of materials, supplies, etc., to be used in payment of the district's part of the cost of WPA projects. The purposes for which the Act of Congress creating the Works Progress Administration was designed and the method of operation under it are fully set forth in *People ex rel. Toman* v. *Estate of Otis*, 376 Ill. 112.

Appellant challenged the itemization of the appropriation on the grounds that materials, supplies, etc., are indefinite and may mean one or more of innumerable items. The fact that the budget furnishes the taxpayer the information that the appropriation of $298,000 is in connection with the WPA projects to be expended on school

property and makes it payable from the building fund, and the further fact that it is a capital outlay for construction and betterments of such property is sufficient to designate the general purpose for which the appropriation is made.

It is well settled that it is not necessary to state each particular purpose for which a tax is levied where each purpose is properly embraced in one general designation. (*People v. Hamilton,* 373 Ill. 124; *People ex rel. Gill v. Schiek,* 368 Ill. 353; *People ex rel. Schaefer v. New York, Chicago and St. Louis Railroad Co.* 353 Ill. 518.) It has been held that itemization requirements of a taxing statute must be accorded a practical and common-sense construction. (*People v. Estate of Otis,* 376 Ill. 112; *People ex rel. Dale v. Jackson,* 272 Ill. 494.) The facts disclosed by an examination of the budget show the general purpose for which the money was to be expended and that was sufficient. It is not necessary to give a detailed itemization of the material, supplies, etc., to be purchased.

Appellant relies upon cases such as *People ex rel. Toman v. Advance Heating Co.* 376 Ill. 158, where it was held an appropriation of the city of Chicago "to be expended by various departments under the direction of the Mayor and City Comptroller in connection with WPA projects," was vague and indefinite. It will be observed that such appropriation was not for any particular purpose. It was to be expended for the purposes to be determined by the city officials named. That case is distinguishable from the case at bar.

In *People ex rel. Lindheimer v. Hamilton,* 373 Ill. 124, it was held a levy for "new buildings" need not be further itemized to show the amounts appropriated for buildings in process of construction. It was held that the budget statute did not require the board in making its appropriations to distinguish between buildings actually under contract and those about to be constructed.

The appropriation item considered in *People ex rel. Toman* v. *Estate of Otis,* 376 Ill. 112, was similar in principle to the one in question. It was for maintenance of plant materials, supplies and expenses and supervision of painting and decorating in conjunction with WPA projects, $250,000. With the aid of the information acquired by use of the index to the budget code it was held to be sufficiently itemized.

It is not necessary to repeat as to each of said items of appropriations, for they are controlled by the same principle, and the order overruling the objections to all three of said items is sustained.

After appellant filed written objections to the appropriations mentioned, the board of education adopted two resolutions in an attempt to make the purposes more specific and overcome appellant's objections. Such amendments were adopted more than two years after the budget was adopted. Appellee's contention that section 236 of the Revenue Act (Ill. Rev. Stat. 1943, chap. 120, par. 717,) authorized such amendment and appellant's objections thereto need not be considered since we have held that the appropriations in their original form were sufficient.

The 1940 budget of the board of education for the city of Chicago showed appropriations as follows:

City Junior College, Herzl Branch—78...$232,470.00
City Junior College, Wilson Branch—75.. 334,310.75
City Junior College, Wright Branch—77.. 359,287.25

If any legislative authority for establishing and maintaining a junior college exists, it is derived from section 136 of the School Law, (Ill. Rev. Stat. 1943, chap. 122, par. 159,) which provides: "In addition to its other powers, such board of education may manage and provide for the maintenance of not more than one junior college, consisting of or offering not more than two years of college work

beyond the four year course of accredited high schools, as a part of the public school system of the city."

Appellant's first objection to the appropriation is that the act which authorizes maintenance of a junior college is special legislation and violates section 22, article IV, of the constitution. It is also urged that the act violates section 1, article VIII, of the constitution. The latter constitutional provision directs that the General Assembly shall provide a thorough and efficient system of free schools whereby all children of the State may receive a good common school education. It is argued that the constitutional provision is a limitation upon the power of the legislature, that it can only provide for common school education and that maintenance of a junior college exceeds such limitation. It is therefore argued that the appropriations were not for corporate purposes.

Appellee contends the constitutional questions are not properly preserved for presentation on this appeal. The facts upon which such contention rests are that the first objections filed by appellant did not refer to the appropriations for junior colleges, and an objection to such items was not made until appellant amended its objections December 1, 1942, by adding an objection designated objection No. VI. The only ground alleged in said additional objection No. VI was that the board of education was appropriating for three distinct junior colleges although the statute expressly limited it to one. A hearing on the objection was had in October, 1943. At that time no constitutional question was raised by appellant's objections and such question was not presented to the court. During the hearing, the court asked appellant's counsel a question in response to which the attorney stated that their objection was to the prohibition of the statute as to the number of junior colleges the board of education was authorized to maintain. A judgment order disposing of appellant's objections was not entered until March 1, 1944. On the

day the order was entered, appellant obtained an order of the court to amend its objections. Such order granted leave to amend objections by adding thereto objection VI "to conform to the proof heretofore made herein." The amendment filed on that day pursuant to such order introduced into the case, for the first time, the constitutional questions above referred to. The judgment order that was entered on March 1, 1944, the one from which this appeal was taken, directs "that all objections to all tax rates not specifically enumerated in this order as sustained, including objections designated, 'I Objections to taxes for WPA Items,' and 'VI objections to taxes for Junior Colleges,' are not well taken and the same are hereby overruled." It contains no reference to any constitutional question and does not expressly refer to the objection that had been filed the same day that it was entered.

Appellee contends the statement made by appellant's counsel during the course of the trial amounted to a waiver of the constitutional question. When the statement was made no objection had been filed raising a constitutional question, and, therefore, we do not construe the statement as a waiver of such question. However, the question is not preserved so that it may be considered on this appeal. As previously stated, there is nothing in the record to show that the constitutional question was passed upon by the trial court. It was not an issue when the hearing was had in October, 1943, and the question was not introduced into the case until the day the judgment order was entered when appellant obtained leave to amend his objections to make them "conform to the proof." The reference in the judgment order entered March 1 to "VI Objections to taxes for Junior Colleges" must be held to refer to the objection filed in December, 1942. It was the only one before the court when the evidence was taken in October, 1943, and, in fact, the constitutional objection was not filed until the date the order was entered. In absence of

something in the record to show the constitutional question was called to the attention of the court and a ruling obtained, there is no basis for assigning error on such question.

The rule is well settled that the question of the constitutionality of a statute can not be raised for the first time in a court of review. In order for this court to pass upon a constitutional question the record must disclose that the objection was called to the attention of the trial court and ruled upon by it. (*Cummings* v. *People*, 211 Ill. 392, *Griveau* v. *South Chicago City Railway Co.* 213 Ill. 633; *Moses* v. *Royal Indemnity Co.* 276 Ill. 177.) Errors assigned upon constitutional questions must, like other assignments of errors, be based upon the record itself. They can not rest upon the mere argument of counsel or on the fact that the question might be raised in the pleadings or during the trial. *McNeil & Higgins Co.* v. *Neenah Cheese and Cold Storage Co.* 290 Ill. 449; *Masonic Fraternity Temple Ass'n* v. *City of Chicago*, 217 Ill. 58.

The constitutional questions are not reviewable.

The only objection to the college appropriation which is subject to review on this appeal is as to whether the board of education was appropriating and levying a tax for the maintenance of one junior college or for three. The statute limits the board to the "maintenance of not more than one junior college." Considerable evidence was introduced to show the method pursued in creating, organizing, operating and maintaining college courses. Such evidence consists of record evidence, being certain resolutions adopted by the board for the period from 1923 to January 1, 1940, and appropriations for maintenance of college instruction for the same years and for the year 1940, and oral testimony, the evidence of the superintendent of the Chicago schools and the deans in charge of the various college units.

The record evidence shows that for the period 1923-1929, both inclusive, the board maintained what was termed a junior college department in connection with Crane Technical High School. Appropriations for those years were under the heading "Crane Technical High School and College." In January, 1930, pursuant to report of its superintendent of schools, the board separated the junior college department from Crane Technical High School and organized it under the head of "Crane Junior College." Budget appropriations for 1930-1933 both inclusive, were made to meet such separation. On September 1, 1933, evidently as an economy measure, the board discontinued Crane Junior College, but in March, 1934, it adopted a report of its superintendent of schools in which he recommended, "(1) That three city junior colleges be established; one on the South side in the Normal college building; one on the West side in the Medill high school building, and one on the Northwest side in the Parental school building. (2) That for efficient administration and economy the city junior colleges be under the general supervision of a president, the superintendent of schools, with a dean in direct charge of each college." As a reason for such action the report included the following statement: "Thousands of high school graduates wish to continue their schooling. This number is greater than before because many who might otherwise go into industry are shut out by economic conditions. The welfare of this city depends to a great extent, upon the ability of youth and adults to make wise use of leisure. The junior college offers the best possible solution to this leisure problem." The budget for 1934 contained an appropriation for

"CITY JUNIOR COLLEGES—56

3 Colleges, $209,000."

In July, 1934, the board adopted the request of the superintendent of schools in reference to changing the location

of the North side school from the Parental school building to the Wright school building, and on August 8, they employed three persons, each being designated as dean "of the city junior college." Authorization was granted to employ an assistant in charge of science exhibits for city junior colleges. The budget for 1935 contained a summary of appropriations classified by organization units and showed appropriations for city junior colleges amounting to $508,194. The same budget showed the amount appropriated for each unit as city junior college Normal branch, city junior college Medill branch, and city junior college Wright branch. From May, 1935, to January 1, 1940, various reports were approved and resolutions adopted in some of which the three places of college learning were referred to as constituting a single unit, while in others they were referred to in the sense that they were three separate and distinct colleges. Resolutions changing name and location of some were also adopted. The annual budgets for said period showed appropriations for the units of "Herzl junior college," "Wilson junior college" and "Wright junior college." In January, 1938, the board adopted a report of the superintendent on the reorganization of the "Chicago Junior College." This report contained the conclusions of a committee consisting of the registrar of the University of Illinois and other persons connected with the university, the college deans and others. Such report deals with the reorganization as though it was a single institution, Chicago Junior College. As stated, the 1940 budget showed appropriations for the "city junior college, Herzl branch," city junior college, Wilson branch" and "city junior college, Wright branch."

The evidence of the superintendent and the three deans may be summarized as follows: The superintendent, acting as president of the junior college, and the three deans meet at least once a month to determine and supervise the policies and courses of instruction to be followed in the

three schools. All the schools are operated under the same policies and, except to meet special circumstances, the same educational courses are given and the requirements for admission of students and completion of the courses are the same in each school. The diploma issued to the graduates of the various schools shows on its face that it is issued in the name of a single institution, and accrediting agencies of the University of Illinois or the North Central Association certify to the accredited standing of the three schools as a single institution. As to certain courses of study, the board employs one person whose duty it is to co-ordinate the instruction in such courses between the three schools.

Section 136, paragraph 159, of the School Law as amended in 1931, was adopted as an emergency act. The emergency, as stated in the act, arose out of the fact that the power of the board to manage and maintain a junior college theretofore established had been questioned. It will be noted that at the time the act was adopted the board was maintaining what was then known as Crane Junior College.

The meaning and intent to be given said section must be determined by the relationship of the subject matter of the amendment to the substance of the act of which the amendment is a part. The first paragraph of the section was not changed when amended in 1931. It deals with the powers a board may exercise in the general supervision and management of the education and public school system of the district, and directs that it shall have power to make suitable provision for the establishment and maintenance throughout the year, but not less than nine months "of schools of all class and kinds including normal schools, high schools, night schools, schools for defective and delinquents, parental and truant schools, schools for the blind, the deaf and crippled, schools or classes in manual training, constructural and vocational teaching, domestic arts and

physical culture, vocation and extension schools and lecture courses, and all other educational courses and facilities, including playground maintenance."

The part added by the amendment provided that a college course furnished pursuant to its terms should be "as a part of the public school system." The provision in the part added by the amendment, that there should not be more than one college, does not either expressly or by implication state that a board of education may not establish branches of the general college at places in the district to meet the demands and needs of its pupils. The language of the amendment, that such college work shall become a part of the public school system, evidences an intent to make the college instruction stand in the same relation to the public as does the instruction furnished in other schools which the board has the power to establish. If it finds that a high school is needed in a certain locality, it makes provision for a building and the employment of a corps of teachers. The action taken is in exercise of the general powers of the board to furnish high school education to the pupils of the district, and the same applies to colleges.

Appellant contends that the act should be construed as restricting the power of the board to the maintenance of a junior college as a single unit with one dean or principal in charge, one curriculum, one corps of teachers, one student body, one name, and one location. It would be unreasonable to ascribe to the legislature the intent to restrict the functions of a board in a school district with a population the size of the city of Chicago to the establishment of a college to serve the whole district from a single location, and to maintain it as an indivisible separate unit, as contended by appellant. It is obvious that if all the students of the city of Chicago eligible for admission to college were required to attend at a single place, it would render operation of a college under the act impracticable and make it practically inaccessible to many.

Such a result would be counter to the common understanding of what is essential to the maintenance of a public school system and the providing of educational facilities at public expense through the medium of such a system.

We construe the act as vesting in the board of education the power to establish and maintain courses of instruction in two years of college work beyond the four-year course furnished by accredited high schools, and if the board determines that the demand for such educational facilities is such that it is not practicable to have all attend college established at one location, it has the power to establish a branch or branches at such place or places as will meet the needs and convenience of the inhabitants of the district.

It is true that there are certain statements in the resolutions and records of the board which might be construed as making provision for maintaining one college, while the resolution of March 26, 1934, indicates an intent to establish three colleges. In view of the construction placed upon the statute, we do not regard such discrepancies in the resolutions as of any material consequence. The question in this case is confined to the appropriation for the year 1940, and a controlling principle of law applicable in such cases is that the validity of an appropriation is to be determined as of the time of its adoption, and on the question under consideration its validity depends largely upon the provisions of the budget, that is, was it an appropriation for one college or was it an appropriation for three colleges? The budget carried the appropriation as to each branch of the college and was in accord with the requirements of the budget law, which provides that the budget shall specify (a) the several organization units, purposes and objects for which the appropriations are made, and (b) the amount appropriated for each organization unit, purpose or object.

Under the facts and the law, the county court was correct in holding that the appropriations in question were valid.

The judgment of the county court overruling the objections is affirmed.

*Judgment affirmed.*