(No. 28718.—

THE PEOPLE *ex rel.* A. C. AMMANN, County Collector, Appellee, *vs.* WABASH RAILROAD COMPANY, Appellant.

*Opinion filed September 19, 1945.*

LeForgee & Samuels, of Decatur, and Carleton S. Hadley and L. H. Strasser, both of St. Louis, Missouri, of counsel,) for appellant.

Ivan J. Hutchens, State's Attorney, and Joseph L. Rosenberg, (Ralph J. Monroe, Byron M. Merris, and Robert N. Patterson, of counsel,) all of Decatur, for appellee.

Mr. Justice Fulton delivered the opinion of the court:

Appellant, Wabash Railroad Company, a corporation, appeals from an order and judgment of the county court of Macon county overruling objections it filed to certain taxes levied against its property in that county for the year 1943. The taxes involved are taxes extended for: (1) Decatur Park District for airport expense; (2) city of Decatur for public library tax; (3) part of the road and bridge tax of the township of Decatur to the extent of $55,000.

The Decatur Park District was organized under the provisions of the act of June 24, 1895, entitled "An Act to provide for the organization of park districts and the transfer of submerged lands to those bordering on navigable bodies of water." (Ill. Rev. Stat. 1943, chap. 105, pars. 256 et seq.) The act in general provides for the establishment of an organized park district through a petition, referendum, election and authority given by a majority of the legal voters in the territory seeking the formation of

a park district. It further provides that when properly organized such district shall constitute a body corporate and exercise the powers given under the act. The management of the park district is lodged in a board of commissioners duly elected and qualified under the terms of the act, and section 11 of the act (par. 266,) sets forth their powers as the corporate authorities of such district. Under section 14, (par. 269,) the park district is given broad and complete powers in establishing and constructing all manner of park and recreational facilities and equipment. It is also given power, in section 15, (par. 270,) to acquire lands and properties by condemnation or otherwise, for the purposes needed for the appropriate park development, and also to acquire lands by condemnation or otherwise for an armory.

In 1929 the legislature adopted an act entitled "An Act authorizing park districts to acquire, establish, construct, maintain and operate airdromes, airports and landing fields for aircraft, and authorizing the exercise of the power of eminent domain and permitting the levy of a tax therefor." (Laws of 1929, p. 557.) The title of said act, herein referred to as the Park Airport Act, was amended in 1943 and section 3 was added by which the tax voted could be anticipated by the issuance of bonds and for the purpose of acquiring land and building an airport. Ill. Rev. Stat. 1943, chap. 105, pars. 327b, 327c, and 327c½.

Section 1 of the aforesaid Park Airport Act is as follows: "Any park district organized under any General or Special Act of the General Assembly of the State of Illinois, having a population of less than 500,000 is authorized to acquire by purchase or condemnation under power of eminent domain, or lease, real estate, in whole or in part, either within or without the corporate limits of said park district for the purpose of establishing for said park district an airport and landing field for aircraft, and to provide hangars, shops, and other necessary equipment and

appurtenances therefor usually incident to the operation of an airdrome, and to maintain and operate the same. As amended by act approved June 12, 1940."

Section 2 of said act is as follows: "Upon a petition signed by not less than two (2) per cent of the legal voters of any such park district or upon the order of the board of commissioners of any such park district, the question of the levy of an additional annual tax to provide revenue for the purpose of acquiring, constructing, maintaining and operating airdromes, airports and landing fields for aircraft shall be submitted to the legal voters of such park district at the regular biennial election in such district or at a special election called for that purpose." (Then follows the provisions for the election and directions to the county clerk to extend said tax in addition to maximum taxes permitted or authorized to be levied for park purposes.)

It was pursuant to this act that an election was had in the Decatur Park District and the tax levied, to which appellant's objections were filed.

It was stipulated that the boundaries of the Decatur Park District are the same as and are co-extensive with Decatur township; that said park district is located entirely within Macon county, and that the city of Decatur is located entirely within said park district, and that the city of Decatur covers approximately one third of the park district and one third of Decatur township.

The proof showed that the park district had leased in July, 1943, one airport field of 120 acres and had bought another field of 700 acres, which was authorized by ordinance of the park district adopted on January 13, 1944, and that an airport was being constructed on said 700-acre tract, and that both of these airports were located in Macon county, Illinois, but were outside the park district. The proof further showed that the lease to the 120-acre air-

port field was cancelled on September 14, 1944, by contract, which was after the end of the fiscal year for which the levy was made on July 15, 1943. The evidence showed that in that tax levy there were various itemized expenditures aggregating $38,000 levied "For Airport Expense." The evidence further disclosed that the item, "To Cost and Expense of Purchase of Land For Airport, $23,000.00," was for the airport of approximately 700 acres located northeast of the city of Decatur, while the remaining ten items aggregating $15,000 were for the 120-acre airport on leased ground located northwest of the city of Decatur.

It was further stipulated that the objector had duly filed its objections to the application of the county collector for judgment.

There was no evidence offered or any stipulation made that either the county of Macon or the city of Decatur were operating airports or levying any tax for the same, and counsel for appellant do not make any contention that said county of Macon or city of Decatur were actually operating airports or levying any tax for the same.

Appellant contends that sections 1 and 2 of the Park Airport Act, under which the levy in question was made, are unconstitutional and that the levy is for a noncorporate purpose; that said act is vague, indefinite and uncertain; that under said act and the other airport legislation hereinafter referred to, which gave to the county and the city of Decatur power to acquire land for airports and operate airports, two or more distinct municipal corporations could exercise the same powers in the same territory at the same time; that said act violates the constitution in that it provides that the airport may be located without and beyond the boundaries of the park district; that the power granted to the park district by said sections 1 and 2 was withdrawn by later acts of the legislature granting the same power to other municipal corporations hereinafter referred to

and that said sections were repealed by implication by the passage of said later acts, and finally that the levy for the park district for two airports (being the leased airport and the one under construction) violates the said act and is void.

The first point covered by appellant's brief and argument is based upon the assumption that park districts organized under the act of 1895, (chap. 105, par. 256,) known as the Submerged Land Act, "for the establishment, construction and maintenance of public parks and boulevards," are forever afterwards limited in their charter powers, and that the legislature is without authority, either by direct amendment or by general enactment applicable to all park districts, to confer additional charter powers upon such corporations. No constitutional limitation of this kind or character is cited or referred to. We know of no such limitation and have found none. The repeated pronouncements of this court are quite to the contrary.

In the recent case of *People ex rel. Greening* v. *Bartholf,* 388 Ill. 445, which involved the validity of the act entitled "An Act in relation to municipal airport authorities," approved May 21, 1943, (Ill. Rev. Stat. 1943, chap. 15½, par. 49 *et seq.*), this court, at page 462, said: "Subject to constitutional restraints, the General Assembly may create any kind of corporation it deems essential for the more efficient administration of civil government and it may confer on it such powers and functions as it deems necessary and proper for the administration of the particular power which the corporation may be authorized to exercise. *Board of Education* v. *Upham,* 357 Ill. 263; *Perkins* v. *Comrs. of Cook County,* 271 Ill. 449; *People* v. *Bowman,* 247 Ill. 276."

It was held in the *Bartholf case* that a public airport authority is created for a public and not a private purpose. The question regarding the authority or power vested in

corporate authorities of municipalities to assess and collect taxes was fully and completely considered in the *Bartholf case,* and the court's decision of it is here adhered to.

The question before us is whether the act in question, which gives to park districts power to acquire land for airport purposes and to operate an airport, comes within this legislative power. In the *Bartholf case* we discussed at length the contention made there that the airport authority act authorized the authority to levy taxes for private purposes, and we said, at page 449: "It is well settled that the taking of the taxpayer's money for a private purpose is a violation of the due-process clauses of the State and Federal constitutions." We further said: "Legislative enactments relating to aviation have increased in number in proportion to the development of traffic by air. * * * Such statutes and regulatory measures adopt the existence of air traffic as an established fact. They are not adopted for the purpose of promoting aviation or in the advancement of private interests engaged in its maintenance and development. Such legislation assumes that travel by air is an established means of transportation and that the public welfare and safety of the people requires its regulation."

The appellant in the recent case of *People ex rel. Curren* v. *Wood, ante,* p. 237, decided at this September term, where we sustained the constitutionality of the new Airport Authority Act, contended, as appellant does in the instant case, that the airport act was in violation of the due process clauses because it authorizes the levy of the tax for a municipal purpose which is only a private or a proprietary, rather than a governmental, purpose; that even though it be said that the operation of an airport is within the police power, yet neither the State nor any municipality created by it can engage in a business or enterprise and levy taxes for its operation, and that the operation of an airport is not the exercise of police power, though its regulation may be.

Replying to that contention we said: "The power to operate an airport is vested in the airport authority on the theory that such operation is necessary for public safety in aviation. There is in principle no essential difference, so far as the public interest and the public safety are concerned, between the operation of a public airport and that of a highway, subway, wharf, public park, and the like. Such airports have been characterized as the 'highways of the Air,'.". In that case there is a further discussion of this point, citing late cases from other jurisdictions sustaining the constitutionality of similar legislation, which need not be repeated here.

But counsel for the appellant contend that even though this court in the *Bartholf case* has held that the Airport Authority Act there in question was held to be for a public purpose, still the legislature had no power to give authority to the Decatur Park District, which was organized for the special and limited purpose of constructing and maintaining public parks and boulevards, to levy a tax for airport expense, because it was not a corporate purpose of said park district, and says that an airport does not come within any of the purposes for which the Decatur Park District was established.

This court held in *West Chicago Park Comrs.* v. *City of Chicago,* 152 Ill. 392, that the commissioners are, under the several park acts, a municipal corporation, and this court explained previous decisions of the court referring to the park board of this district as a *quasi*-municipal corporation.

Park districts are the creation of the legislature, organized as municipal corporations as subdivisions of the governing authorities of the State of Illinois. (*West Chicago Park Comrs.* v. *City of Chicago,* 152 Ill. 392; *People ex rel. Carr* v. *Kesner,* 321 Ill. 230, 238; *VanNada* v. *Goedde,* 263 Ill. 105; *Ward* v. *Field Museum,* 241 Ill. 496, 508-9.) In *Ward* v. *Field Museum,* 241 Ill. 496, this

court said, at page 508: "Such corporations, being purely of legislative creation for local government, the legislature may control and dispose of their property as shall appear to be best for the public."

In *Robbins* v. *Kadyk,* 312 Ill. 290, at page 294, this court said: "The creation and maintenance of parks at public expense are recognized as a proper exercise of governmental power and within the corporate purposes of cities when authorized by the legislature. So, also, are the erection and maintenance of statues, monuments and memorials." And at page 293 of that case we said: "What is a public purpose for which a municipality may be authorized to levy a tax is a question, in the first instance, for the legislature, which it must decide upon its own judgment, in respect to which it is vested with a large discretion, which cannot be controlled by the court, except, perhaps, where its action is clearly evasive."

In *Furlong* v. *South Park Comrs.* 320 Ill. 507, at page 511, this court said: "Park purposes are not confined to a tract of land with trees, grass and seats, but mean a tract of land ornamented and improved as a place of resort for the public, for recreation and amusement of the public. The construction and maintenance of a building for museums, art galleries, botanical and zoological gardens, and many other purposes, for the public benefit are recognized as legitimate purposes."

The Decatur Park District, in the making of this levy for airport purposes, was not required to rely upon an implied power or a power germane to its authority to own, operate and maintain public parks and boulevards. The original legislative charter under which it was organized, having been amended by general law, it was specifically and directly authorized: (1) To acquire, own and maintain a municipal airport and landing field; (2) To levy a special tax to acquire and operate the same. This power, having been directly delegated to it by the legis-

lature, no question of implied power or powers germane to the power to operate parks is involved.

Appellant contends that under the statute (Ill. Rev. Stat. 1943, chap. 15½, pars. 23, 69, and 84,) Macon county may establish and levy a tax for an airport; that under article 24 of the Cities and Villages Act, the city of Decatur may do the same, and thus, if the tax levied by the park district is held valid, three distinct municipal corporations may levy a tax for an airport in the same territory, at the same time. Counsel for appellant further states that there now exists in the statutes of this State at least five different types of airport acts, none of which is exclusive, and that there is nothing in any of these acts which precludes another municipal corporation from establishing an airport, even though the park district already had one in existence.

As we have hereinabove pointed out, there is nothing in the record to show, either by stipulation or evidence, nor does counsel for appellant state that the county of Macon and the city of Decatur were operating airports or levying any tax for the same. Under the *Bartholf case,* the result pre-supposed by counsel would not render the act unconstitutional, but could be grounds for the court to grant relief if all of these districts should levy a tax for the same purpose within the same territory, and at the same time.

There are no claims here of any actual duplication of facilities or of conflicting claims of jurisdiction by the different municipal corporations. Whether or not a taxpayer's money is being unnecessarily or improvidently taken by two different municipalities to supply the identical service in the same territory at the same time, and, therefore, without due process of law, is not now before this court.

As we said in the *Bartholf case* at page 467: "Conflicts that might arise between two or more of such municipalities, or inharmonious action that they might take in the

adoption of regulatory measures are not the subject of consideration on this review. Nor can consideration be given to the possibilities that repeal by implication might control as to some of said enactments."

It is next urged by appellant that the statute is unconstitutional and void because it authorizes the airport to be located within or without the boundaries of the park district and because both airports of the Decatur Park District, the one leased and the one under construction, were located without the corporate limits of the district. It is also claimed that the park district could not, therefore, legally levy a tax for airport expense.

Section 1 of this Park Airport Act expressly provides that "Any park district organized under any General or Special Act of the General Assembly of the State of Illinois, having a population of less than 500,000, is authorized to acquire by purchase or condemnation under power of eminent domain, or lease, real estate, in whole or in part, either within or without the corporate limits of said park district, for the purpose of establishing for said park district an airport * * *."

Appellant cites the case of *Mushbaugh* v. *Village of East Peoria,* 260 Ill. 27, at page 32, to the effect that: "The general rule is that one municipality cannot levy a tax for an improvement to be made within the limits of another municipal corporation." The question in that case arose over whether the city of Peoria owned a street within the limits of the village of East Peoria, which was sought to be improved by the said city by special assessment against abutting property owners. The street in question was located within the corporate limits of the village of East Peoria. It had never been within the corporate limits of the city of Peoria, but was claimed to be the property of the city of Peoria by reason of the purchase of the assets of a toll bridge authority. It is true that this court, in the discussion of the case, announced

the general rule above quoted and cited *Town of Ottawa* v. *Walker,* 21 Ill. 605, *People ex rel. Comrs. of Highways* v. *LaSalle County,* 111 Ill. 527, and *Loeffler* v. *City of Chicago,* 246 Ill. 43. The first two cases were decisions under the Cities and Villages Act and the Township Road Act, and held that neither the township commissioner nor the county authorities had any control over the streets and bridges within the corporate limits of the city, and could not levy a tax upon the citizens of the city to build a bridge within the city.

The *Loeffler case* arose over an attempt of the city of Chicago and the city of Cicero to jointly provide for a sewer system and to levy a special assessment therefor. The court held that under the constitution a local improvement authorized to be made by special assessment was one purely local, and necessarily within the city limits, and the fact that the two municipalities had designed one combined sewer system and attempted to levy an assessment in the county court against properties located in each of the municipalities was evidence that the improvement was not local and that the property owners in Chicago could not be assessed to construct an improvement for the benefit of property owners in Chicago and in the town of Cicero. In our opinion the facts in the *Mushbaugh case* are to be distinguished from the facts in the case at bar. Here the park district leased land outside of the park district for airport purposes and had purchased the 700-acre tract outside of the park district upon which it was constructing an airport. There is no question in the case at bar of a special assessment based on benefits to be derived by adjoining property, as in the *Mushbaugh case* and the other cases cited therein. No case is cited and we know of no case holding that our State constitution prohibits a municipality from taxing its citizens for the construction of improvements or acquisition of property outside its corporate limits for the use of such municipality and the

public. For many years cities have gone beyond their limits to acquire reservoirs for municipal water supply, have been authorized by law to go beyond the city limits with power lines to obtain electricity for municipal purposes, have been authorized to go beyond the city limits and acquire property for sewer outlets, and to go beyond the city limits and acquire property for laying water mains to supply the city with water from its municipal water reservoir beyond the city limits.

Of necessity, airports require large tracts of land, and airfields cannot be built upon any and every type of terrain. Some municipalities may have such a site within their limits, while others may be so located that it will be necessary for the municipality to go beyond its limits to acquire and establish an airfield.

Counsel for appellant say that there is no limitation in the act as to where an airport may be located and, without violating the same, an airport could be located without the county of Macon, without the State of Illinois and even without the United States. However, that argument becomes a question of an abuse of power rather than a question of the validity of the grant of power, and if the authorities of the park district should abuse their discretion and acquire and seek to operate an airport at an unreasonable distance from the limits of the park district, any taxpayer could apply to the court for proper relief. That question is not now before us. It was stipulated in the trial court that the leased airfield was about four miles northwest of Decatur and the 700-acre tract which had been purchased was about four miles east of Decatur, and the city of Decatur is located entirely within the Decatur Park District. Such a distance certainly is not unreasonable. Furthermore, the park district having purchased the 700 acres, that airport was part of the park district, and the act under which the district was organized expressly provides that the park district may acquire land

by lease, as well as purchase, in which case the 120-acre tract was a part of the park district. This contention of appellant cannot be sustained.

The burden of establishing the invalidity of a tax rests upon the objector, and in the absence of proof to the contrary, it is presumed just and that the officers levying it have properly discharged their duties. *People ex rel. Manifold* v. *Chicago, Burlington and Quincy Railroad Co.* 386 Ill. 56, 63; *People ex rel. Franklin* v. *Wabash Railroad Co.* 387 Ill. 450, 457; *People ex rel. McDonough* v. *Mills Novelty Co.* 357 Ill. 285, 293.

We have held that laws enacted by the General Assembly are presumed to be valid and constitutional, and before they can be declared void it must so appear beyond a reasonable doubt. *People ex rel. Toman* v. *Mercil & Sons Plating Co.* 378 Ill. 142, 146.

We are of the opinion that the levy in question for airport expense was a proper corporate purpose of the Decatur Park District, and that sections 1 and 2 of the Park Airport Act are not open to any of the constitutional objections urged by appellant.

Appellant next contends that section 1 of said act is so conflicting, vague, uncertain, confusing, unworkable and indefinite that it is invalid. No conflicting provisions in the act are pointed out, nor does counsel point out wherein the act is vague, uncertain or confusing. It is argued that the act provides that an airport may be established within or without the territorial limits of the park district, without any restriction or limitation, and that it fails to provide in any manner the use which is to be made of an airport and fails to provide that the public shall have access to it, and further that the taxpayer is unable to determine from the act what his rights are or what the duties of the park board are in the operation of an airport. We know of no constitutional provision or rule of law that requires the legislature, in creating various municipal corporations

and granting powers to their governing authorities, to prohibit a use of public property for private purposes or to say that the park or airport shall be used only for a public purpose. The very authority to acquire property for a public purpose, together with the provisions of the constitution, impose self-executing limitations upon such uses, and when public authorities exceed those limitations in violation of their oath of office the remedy is·in the courts or at the polls.

The case of *People ex rel. Gallenbach* v. *Franklin,* 388 Ill. 560, cited by appellant, is not in point because in that case this court refused to hold the act in question there so vague and uncertain as to be invalid, but held the act void for other constitutional reasons. We there said, at page 562: "The fact, however, that the act is long and complicated, and difficult of comprehension, does not render it invalid, unless the language therein contained is such as to render the act so vague and uncertain that its meaning cannot be reasonably ascertained."

Section 1 of the Park Airport Act is clear and concise, and gives to any park district organized under any general or ˚special act of the General Assembly of this State, having a population of less than 500,000, authority to acquire by purchase or condemnation under power of eminent domain, or lease, real estate, in whole or in part, either within or without the corporate limits of said park district, for the purpose of establishing for said park district an airport and landing field for aircraft, and to provide hangars, shops and other necessary equipment and appurtenances therefor usually incident to the operation of an airdrome, and to maintain and operate the same. It does not purport to be an act complete within itself, such as the Aviation Districts Act, the Municipal Airport Authorities Act, and the various other acts of the legislature dealing with aviation, but it merely amended the Park Act of 1895 by giving to the various park districts charter

powers, additional to those previously granted to said park districts, to acquire a site for the purpose of establishing for the park district an airport and landing field for aircraft, and hangars, shops and other necessary equipment, etc., and to maintain and operate the same. The park districts to which this additional power was given were already municipal corporations exercising the powers given them by the legislature for the public, and this amendatory act did not need to contain the provisions that the airport should be used only for the public, nor to prohibit it being used for private purposes.

We do not believe the act in question is subject to the objections raised by appellant.

It is next objected that the levy is void because the Decatur Park District is attempting to maintain two airports, but in our opinion the evidence does not sustain this contention. At the time the levy was made, the park district operated an airport on leased ground which was inadequate. It then took the necessary proceedings to acquire another site by purchase, and to have it improved as an airport by Federal grant under the jurisdiction of the Civil Aeronautics Administration. The evidence showed that the lease of the 120-acre tract was cancelled on September 14, 1944, and the ordinance which authorized the park district to purchase the 700-acre tract was adopted on January 13, 1944, but that the airport was simply under construction on said larger tract and was not to be completed until the year 1945. The new airport, in fact, is not yet completed. The district actually operated only one airport. Should the existence and operation of the two airports overlap, we are aware of no law which would have prohibited the park district from maintaining the first airport until the second one was completed and ready for use. Similar situations have arisen in other municipalities, and it has never been required that a school dis-

trict must give up one school house and site before a new one, which it has acquired or is constructing, has been completed and ready for operation, thus leaving the public without a school. Nor has it been held that a county must give up and abandon its old court house before it begins the construction of a new one, which might be located on a new site.

The tax levy showed $15,000 of the total levy was for "airport expense" and was separated into ten items and from their description the taxpayer could easily determine that said items were levied for the leased airport, and the remaining item in the levy of $23,000 was for "cost and expense of purchase of lands for airport," and certainly the taxpayer could tell for which airport that item of the levy was made. Under the proof, and as a matter of law, this contention is untenable.

Appellant contends that section 1 of the Park Airport Act was repealed by implication by later acts of the legislature, and refers to article 24 of the Cities and Villages Act, which was enacted August 15, 1941; the act pertaining to Aviation Districts, enacted July 21, 1941, (Ill. Rev. State. 1943, chap. 15½, par. 23;) the act in relation to Municipal Airport Authorities, approved May 21, 1943, (Ill. Rev. Stat. 1943, chap. 15½, par. 49;) the act to empower counties to acquire, own, operate, etc., airports, approved March 14, 1941, (Ill. Rev. Stat. 1943, chap. 15½, par. 69;) and the act pertaining to counties of less than 500,000 population, empowering them to establish and maintain airports, etc., either alone or by such counties jointly with certain taxing districts located within such counties, approved July 22, 1943, (Ill. Rev. Stat. 1943, chap. 15½, par. 84,) and cites several decisions of this court to the effect that the General Assembly has the power to withdraw from municipal corporations a power previously given and confer it upon another municipality.

It is not claimed, however, by appellant that any of these later legislative acts pertaining to airports and aviation contained any reference to sections 1 or 2 of the Park Airport Act, which was enacted in 1929 and amended in 1943 by amending the title of the act and by the addition of section 3, or that any of said subsequent acts expressly repealed such sections. At the same session of the legislature in 1929, at which the act in question was adopted, section 65 of the Cities and Villages Act, as it was then written, was amended to provide that cities should have the authority to acquire real estate, either within or without the corporate limits of the city or village, for the purpose of establishing landing fields for aircraft. (Cahill's Ill. Rev. Stat. 1929, chap. 24, par. 65(100).) Sections 1 and 2 of the Park Airport Act were modified by an amendment enacted in 1940, and at the session in 1943, which was the same session at which the other legislation referred to by appellant pertaining to airports was passed, the act in question was amended by title and an additional section added which authorized the issuance of bonds in anticipation of the collection of the tax levy under the authority in section 2.

From a reading of these various acts and the act in question, we cannot say that they are inconsistent or repugnant. The fact that the county act, the city act, the Aviation Districts Act, the Municipal Airport Act and the Airport Authorization Act, as well as the amendment of the act in question, were all passed at the same session of the legislature is significant, and it shows that the legislature was not granting the right to own and maintain public airports in any one authority or in any one class of authorities, but was extending or enlarging the power of various municipal corporations and governmental agencies of the State to acquire sites for airports and the operation of airports and landing fields. It shows the legislature was

keeping step with the rapid advance in aviation and was recognizing the needs of different localities and different municipal organizations according to the conditions existing in the different localities.

Repeals by implication are not favored, and it is only where there is a clear, repugnance between the two acts, and the provisions of both cannot be carried into effect, that the later law must prevail. (*Kizer* v. *City of Mattoon,* 332 Ill. 545, 548; *City of Chicago* v. *Hastings Express Co.* 369 Ill. 610, 615; *City of Geneseo* v. *Illinois Northern Utilities Co.* 378 Ill. 506, 529.) The intention of the legislature to repeal must be clear and manifest. *United States* v. *Borden Co.* 308 U. S. 188, 60 Sup. Ct. Rep. 182; *People ex rel. Mathews* v. *Board of Education,* 349 Ill. 390.

We conclude, therefore, that sections 1 and 2 of the Park Airport Act in question were not repealed or withdrawn by the passage of the subsequent acts referred to, and that said sections were in full force and effect at the time the levy in question was made by the Decatur Park District, and still are. If the legislature intended to deprive park districts of the right to acquire sites for an airport and operate and maintain an airport, undoubtedly it would have clearly and positively expressed such purpose and intention in these later acts.

It is next contended by appellant that the item in the levy of the city of Decatur for "Public Library Tax . . . $42,000" is void because not sufficiently itemized. This levy is made under the provisions of the act relating to municipal public libraries (Ill. Rev. Stat. 1943, chap. 81, par. 1,) which provides that "The city council of each incorporated city * * * shall have power to establish and maintain a public library and reading room for the use and benefit of the inhabitants of such city and may levy a tax of not to exceed one and two-tenths (1 and 2/10) mills on the dollar annually, on all the taxable property in

the city for library purposes; * *˙ * such tax to be levied and collected in like manner with the general taxes of said city, and to be known as a library fund."

Article 16 of the Cities and Villages Act provides that where a tax is to be raised for several purposes, the amount for each purpose shall be separately stated. This provision is the same as section 1 of article 8 of the former Cities and Villages Act, prior to its revision which became effective January 1, 1942.

The appropriation ordinance, passed June 21, 1943, appropriated the sum of $42,000 for "Public Library Tax," and the tax levy ordinance passed August 2, 1943, made a tax levy for the following purpose: "Public Library Tax . . . $42,000."

We have often held that the taxpayer's right to have separately stated and itemized the several purposes for which public money is appropriated or taxes levied is a substantial right of which he may not be deprived. (*People ex rel. Thies* v. *Baltimore and Ohio Southwestern Railroad Co.* 356 Ill. 272; *People ex rel. Anderson* v. *Baltimore and Ohio Southwestern Railroad Co.* 359 Ill. 301; *People ex rel. Toman* v. *Signode Steel Strapping Co.* 380 Ill. 633.) The purpose of requiring itemization is to afford taxpayers information with respect to a particular appropriation and the levy of the tax. (*People ex rel. Oller* v. *New York Central Railroad Co.* 388 Ill. 382.) We have also declared that itemization requirements must be accorded a common-sense construction. (*People ex rel. Toman* v. *Estate of Otis,* 376 Ill. 112.) In *Siegel* v. *City of Belleville,* 349 Ill. 240, we said: "A single general purpose is sufficient to include every appropriate expenditure although there may be many items." In *People ex rel. Nash* v. *Chicago and Northwestern Railway Co.* 359 Ill. 435, we said: "The law does not require that in the levying of town taxes the amounts required to be raised by taxation shall be separately stated so long as it appears that the gen-

eral purposes are specified and are within the legal bounds of the town's taxing power."

In *People* v. *New York Central Railroad Co.* 388 Ill. 382, in overruling an objection to an appropriation for county relief, we said: "A single appropriate general purpose is sufficient to include every expenditure although there may be many items. In short there is no valid objection to levying a single sum for several purposes which are embraced within some general designation giving the necessary information to the taxpayer." In the same case objections to the following appropriations, because not sufficiently itemized, were overruled: "For public parks and parkways and maintenance thereof, $3,000," "for maintenance of public library and reading rooms to be known as the library fund, $10,000," "for maintenance and operation of garbage incinerator or reduction plant and collection of garbage, $5,000." The opinion also sustained other similar levies, holding that they stated a single general purpose even though they, contained several items, and citing *People ex rel. Toman* v. *Mercil & Sons. Plating Co.* 378 Ill. 142.

In the recent case of *People ex rel. Toman* v. *Belmont Radio Corp.* 388 Ill. 11, we held: "It is well settled that it is not necessary to state each particular purpose for which a tax is levied where each purpose is properly embraced in one general designation." In *People ex rel. Lindheimer* v. *Hamilton,* 373 Ill. 124, it was held a levy for "new buildings" need not be further itemized to show the amounts appropriated for buildings in process of construction.

In the present case it was never intended that the city should control the detailed itemization of expenditures for library purposes. The statute provides that the library board of directors have exclusive control of all moneys collected for such library. The source of information as to the separate items can be found by the taxpayer in the

records of the library board. The levy for "Public Library Tax" states a single general purpose, and we believe it to be sufficient to include appropriate expenditures even though there be several items.

Lastly, appellant objects to the levy of the commissioner of highways of the town of Decatur for road and bridge purposes to the extent of $55,000 on the ground that the levy exceeded the legal appropriation and budget ordinance of the commissioner by that amount, resulting in an excessive tax against appellant in the amount of $3144.91. The commissioner of this township on August 31, 1943, made and adopted a combined appropriation and budget ordinance under the provisions of the budget law, showing under the heading of "Estimated Receipts" the following: Taxes to be received from the county treasurer, $72,000; estimated expenditures for commissioner of highways, $72,000. The budget adopted on said date by the commissioner in the same ordinance showed under the heading of "Estimated Receipts" the following: Taxes to be received from the county treasurer, $72,000, and under the heading of "Expenditures": "Total for Commissioner of Highways, $72,000," and in addition thereto it showed the following: "For that portion of the Road and Bridge fund to be paid to the City of Decatur, being 50% of the Road and Bridge Tax, paid in the City of Decatur, $55,000," making a total budget of $127,000. Subsequently on September 7, 1943, said commissioner of highways made his tax levy in the amount of $127,000, specifying in detail the amounts necessary for each particular purpose, said levy being itemized for the several uses and purposes for which the commissioner is authorized to levy under the statute. No objection was made by appellant below or in this court to the form of the levy nor to the amounts levied, but its only objection is as to the form and contents of the budget and appropriation

ordinance which included the sum of $55,000 which the city of Decatur would receive.

The appropriation ordinance appears in the record and shows that the city of Decatur made various appropriations for street purposes in the amount of $15,500 accruing to the city, in accordance with section 59 of the Roads and Bridges Act, and under the heading of "Department of Streets and Public Improvements," there is appropriated $112,648 for streets and sewers. Said section 59, (Ill. Rev. Stat. 1943, chap. 121, par. 65,) specifically provides that cities, which includes the city of Decatur, shall appropriate this money to the improvement of roads, streets and bridges.

Appellant contends that the item of $55,000 was neither a proper nor a lawful item in the budget, and that it was not a sum of money necessary to defray a necessary expense and liability of the town of Decatur, and further says that the share of the city of Decatur would be paid directly to the city of Decatur by the county collector under the statute and that the township would never get the money paid to the city, and, therefore, it should not have been included in the budget. In support of this contention, appellant cites the case of *People ex rel. Larson* v. *Thompson,* 377 Ill. 104, and says that under this holding the tax levy is limited to the amounts appropriated, and that inasmuch as the commissioner adopted an appropriation and budget ordinance prior to making his tax levy, the commissioner could not levy more than he had legally appropriated. In other words, appellant says the appropriation was $72,000, while the levy was $127,000, and, therefore, the levy is illegal in the amount of $55,000.

Counsel for the highway commissioner contend that by including in the budget the item of $55,000, the total of $127,000 was appropriated, because that money is included in the appropriation ordinance of the city of Decatur, and

that under section 59 of the Roads and Bridges Act, above cited, the city of Decatur is required to appropriate this money to the improvement of roads, streets and bridges and, therefore, the entire $127,000 has been appropriated. The purpose of the budget was to reveal to the taxpayer, and not to conceal, the facts as to the taxes to be paid and the specific purposes therefor.

Appellant relies upon the case of *People ex rel. Hempen* v. *Baltimore and Ohio Railroad Co.* 379 Ill. 543, wherein we held that a levy of the commissioner of Sugar Creek township for road and bridge purposes in the sum of $1300, designated as being "deductions for the cities of Trenton and Aviston within said township," was illegal. The statute (Ill. Rev. Stat. 1943, chap. 121, pars. 62 and 65,) provides that where a township is partly situated within the confines of the corporate limits of a city, one half of the levy shall be paid to the treasurer of the city, and in that case we said: "The regular levy is made by the highway commissioner for the entire township, but as to that part of the valuation lying within the city, the part of the money realized from the taxes is divided between the city and the township. * * * This does not create a separate purpose for the levying of taxes, but only provides for a division of taxes levied for road and bridge purposes by the commissioner." At pages 550-51 we said: "We do not think this item [deductions for the cities of Trenton and Aviston within said township] has any place in a levy. * * * The effect of the levy being made in this manner was to create a separate item for road and bridge purposes not included in the statute." However, this case is to be distinguished from the facts in the case at bar because the levy of the commissioner of highways of the township of Decatur did not include any amount as "deductions for the City of Decatur." Furthermore, this item objected to appeared only in the budget ordinance and was not included in the levy. In fact, appellant does

not claim that the commissioner levied for this purpose, but merely claims that the budget improperly included this item, and says that inasmuch as the commissioner could not levy for said purpose, therefore he should not have included it in the budget.

It would appear that counsel for appellant considered the budget and appropriation ordinance a part of the tax levy itself. This, however, is not the case, and neither such budget nor appropriation ordinance are tax-levying proceedings in any sense. Taxes are levied by the tax levy ordinance. *People ex rel. Gill* v. *Schiek*, 368 Ill. 353, 355-61.

Section 4 of the Illinois Municipal Budget Law of 1937, as amended in 1939, contains the following provision: "The failure by any governing body of any municipality to adopt an annual budget and appropriation ordinance, or to comply in any respect with the provisions of this Act, shall not affect the validity of any tax levy of any such municipality otherwise in conformity with the law." (Ill. Rev. Stat. 1939, chap. 120, par. 365.4.) In 1943 the statute was again amended and excepted from the operation of the act "School Districts governed by Boards of School Directors." Section 3a of the act of 1939 was repealed and section 4 restored to its original form as contained in the Laws of 1937, the same being the first sentence, only, of section 4 as quoted above. (Laws of 1943, p. 1061.) We construed this statute in the case of *People ex rel. Manifold* v. *Chicago, Burlington and Quincy Railroad Co.* 386 Ill. 56, as applied to certain school taxes to which objection had been made, and at pages 60-61, we said: "It seems rather apparent that the legislature desired conformity in the manner of budgeting expenses throughout the State, and the publication of information that would require municipalities to use the money for the purposes appropriated and inform the taxpayers as to the amount and the use for which taxes were raised, but there is no indication that the budget was to be a preliminary require-

ment to the levying of a tax. The law is general in its application to those bodies included, and is intended to bring about uniform specification and classification of revenue and expenditure by providing the forms used in the budget be furnished by the Tax Commission. If there was any doubt that this is the correct construction it would be removed by the provision of section 4, which expressly provides that the failure by the governing body to adopt the annual budget and appropriation ordinance, or to comply in any respect with the provisions of the statute shall not affect the tax levy of any municipality otherwise in conformity with the law. * * * Of course, where the budget and appropriation ordinance has been made, no expenditure in excess of the sum provided for in the same is permissible."

In the case of *People ex rel. Larson* v. *Thompson,* 377 Ill. 104, cited and relied upon by counsel for appellant, which involved the validity of certain school taxes, we held that the taxes in question were extended at an excessive rate and were void to the extent that the amounts extended for that purpose exceeded the amount appropriated therefor in the budget and appropriation ordinance. However, we do not think that this case is applicable to the facts in the case at bar, nor do we agree with appellant that "the facts in the case at bar and in the Thompson case are identical." In the *Thompson case* the taxing bodies were school districts, which said districts collected all the taxes levied for them, and the amount of taxes levied in each district exceeded the amounts appropriated in the budget and appropriation ordinances passed by the several districts. In the case at bar the taxing district, being the township of Decatur, received in taxes only $72,000 out of the $127,000 levy, the other $55,000 having been paid to the city of Decatur. The levy of the commissioner was for the whole township, and one half of

said levy, under the statute, belonged to the city of Decatur and was paid to the city of Decatur. The levy did not exceed the budget, and, in our opinion, the county court did not err in overruling the objections of appellant to this tax.

The judgment of the county court of Macon county is, therefore, affirmed.

*Judgment affirmed.*