ESSO STANDARD OIL S.A. LTD., ETC., Plaintiff and Appellant, v. PUERTO RICO PORTS AUTHORITY, Defendant and Appellee; CARIBBEAN ATLANTIC AIRLINES, INC., Intervener and Appellant.

Nos. R-66-206, R-66-210. Decided February 26, 1968.

756

James R. Beverley, R. Rodríguez Lebrón, and J. López Baralt for appellants. Francisco L. Acevedo Nogueras, Ramón Cancio, Lino J. Saldaña, and América Lameiro Rivera for appellee. Wilson F. Colberg for intervener and appellant.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Appellant maintains that the impost of two cents on each gallon, or fraction of a gallon of fuel products supplied in the airports of Puerto Rico for use and consumption in the propelling of air transportation vehicles, which the Legislature authorized appellee, Puerto Rico Ports Authority, to levy, is actually a tax, and therefore, the authorization to levy and collect it is unconstitutional, and, furthermore, that

the collection of said tax from appellant, when the latter supplies such products to the intervener, is an imposition and collection of a tax from the latter, a situation which cannot be created since intervener is exempt from payment of taxes and excises; and that under the contract in force between appellant and appellee it was agreed that such impost would not be collected when the fuel is supplied to tax-exempt air enterprises. We do not agree. We shall explain why.

The controversy in this case arises as a result of the approval of Act No. 82 of June 26, 1959 (13 L.P.R.A. § 4030n, p. 467), §§ 1 and 2 of which provide that:

"Section 1. The levying and collection *of the tax* levied by section 30'(a) of Act No. 2, approved January 20, 1956, as amended, known as the Excise Act of Puerto Rico, is hereby suspended as regards aviation gasoline, all fuel products for use and consumption in the propelling of air transportation vehicles, and all mixture of gasoline with any combustible product for use and consumption in the propelling of air transportation vehicles, destined to be consumed in air voyages between Puerto Rico and other places or in air voyages within the territorial limits of Puerto Rico, *if the Ports Authority levies, in lieu of said tax, an impost* of two cents on each gallon or fraction of a gallon of said products and *collects it from the suppliers thereof* operating in the airports of Puerto Rico.

"The term 'supplier' means, for the purposes of this Act, any natural or artificial person engaged in the business of supplying the products above mentioned, and it shall also mean the consumers of said products, in case they may import them directly.

"Section 2. The suspension of the levying and collection of the said impost shall take effect as soon as the Executive Director of the Ports Authority shall serve notice in writing on the Secretary of the Treasury of Puerto Rico that the Ports Authority has levied and is collecting the impost mentioned in the preceding section; and said suspension shall cease upon the same day on which the Authority shall discontinue to collect such impost. As soon as the said impost is suspended, there shall be repealed Joint Resolution No. 103, approved June 24, 1958,

which appropriates to the Ports Authority $300,000 with a self-renewing character for the fiscal years from 1959–60 up to 1968–69 and $65,000 for the fiscal year 1969–70, for promoting and developing aeronautical facilities in Puerto Rico and adjacent islands. (Italics ours.)

Section 4 of said Act provides that:

"Section 4. The Commonwealth Government hereby pledges and agrees with any person, firm, corporation, or commonwealth or federal agency that may subscribe to or acquire bonds of the Ports Authority for financing in whole or in part any enterprise or part thereof, not to limit or restrict the rights or powers conferred upon the Authority by this Act until said bonds of whichever date, together with interest thereon, are fully liquidated and retired."

Pursuant to Act No. 17 of April 11, 1939, extended by Act No. 20 of April 23, 1954, intervener herein was granted *exemption,* until June 10, 1964, *"from the payment of all insular, local, and municipal taxes of whatever name or nature,* on all real or personal property now possessed or hereafter acquired, including all imposts and excises, with exception of the income tax and of the quota to be paid under the Workmen's Accident Compensation Act." (Italics ours.)

Section 8 of the Agreement and Lease Underground Fuel Delivery System executed between appellant and appellee on August 17, 1960, provides that the lessee agrees to pay to the lessor the aforementioned impost for each gallon of aircraft fuel delivered to customers in the airports, except that this impost shall not be collected on fuel delivered into aircraft presently exempted from tax under § 30(b) of Act No. 2 of June 20, 1956, as amended, or under any other statute.

From the text of said Act as well as from the report of the Senate Finance Committee on House Bill No. 663, which became Act No. 82 of 1959, there appears the purpose under-

lying the approval of the latter Act. Said report reads as follows:

"This bill suspends the levying and collection of the *tax* on aircraft fuel and repeals Joint Resolution No. 103 approved on June 24, 1958, and at the same time authorizes the Ports Authority to levy an *impost* of two cents on each gallon or fraction of a gallon of fuel for use or consumption in air voyages within the territorial limits of Puerto Rico.

"It is necessary for the Ports Authority to make improvements and extensions in the International Airport and to accomplish this it must issue revenue bonds. Up to the present time, as reported to the Committee, there is no available market for said bonds of the Ports Authority, because the only funds available to the Authority to meet the demands of said bonds would be the self-renewable appropriation approved by Joint Resolution No. 103, which could be repealed by the Legislature. Naturally, this possibility creates certain state of insecurity for the investors. To confront this situation, this Bill is presented, authorizing the Ports Authority to levy the aforementioned *impost*. The Authority, based on this, could issue bonds which could be paid through the levying of said *impost*." 12-3 Journal of Proceedings 1584 (1959). (Italics ours.)

The Explanatory Brief of appellee's Executive Director on the bill which later became the aforementioned Act No. 82, reports in part, that:

"The bill we are submitting would modify the legislation which levies the impost on gasoline, and would repeal the self-renewable appropriation for the Ports Authority. Under the *modus operandi* we are proposing, the Authority would be authorized to *levy an impost* on the gasoline enterprises. The revenue from said impost would go into the funds of the Authority."

When appellee proceeded to collect the aforementioned impost from appellant, the latter appealed to the Superior Court requesting a declaratory judgment on the ground, in synthesis, that by virtue of Acts Nos. 17 of 1939, 135 of

1945, and 20 of 1954, Caribbean Atlantic Airlines, Inc., was *exempt* from the payment of all insular, local, and municipal *taxes*, of whatever name or nature, said exemption being extended to all real and personal property now possessed or hereafter acquired, including all imposts and excises; that appellant had agreed with Caribbean Atlantic Airlines, Inc., to supply the aviation gasoline that the latter might need, and that in said contract it was agreed that any tax, fee, or charges, which might be imposed on plaintiff with respect to the production, manufacture, sale, delivery or use of the aviation gasoline covered by said contract will be added to the price specified above.

: That under the Puerto Rico Excise Tax Act, the excise tax levied by said Act was not imposed on the gasoline sales made by appellant to intervener, as a consequence of the aforementioned tax exemption statutes, and that under Act No. 82 of 1959 the collection of said impost does not lie either, since said impost is but a substitute of the tax provided in § 30(a) of Act No. 2 of January 20, 1956, and by virtue of the tax exemption granted to Caribbean Atlantic Airlines, Inc., it is not bound to pay said impost; that the term "supplier" of said Act No. 82 must refer to/or include a person in charge of the collection of the impost, since the one bound to pay the impost is the person or entity who uses or consumes the fuel; that there exists a contract between the Ports Authority and plaintiff ESSO, in which it was agreed that the impost of two cents on each gallon would not apply to sales made to tax-exempt entities.

Appellee Ports Authority answered these allegations contending, in synthesis, that the tax suspended by Act No. 82, being of a different nature, does not have juridical similarity with the impost of two cents authorized by said Act No. 82; that the contractual provision between ESSO and the Ports Authority does not exempt plaintiff ESSO from the payment of said impost, and that if such were the case, said contrac-

tual provision is null and void inasmuch as it is in open conflict with Act No. 82, since this Act does not allow or authorize appellee to grant any tax exemption.

That the impost of Act No. 82 is not an excise, duty or tax, but a charge to the suppliers of said products for the privilege of supplying them in appellee's airports, and/or for the use of the property, facilities, and services which appellee maintains in the airports of Puerto Rico to supply them: that since it is not an excise, duty or tax, the Caribbean Atlantic Airlines, Inc., is not exempt from the payment of the aforementioned impost, and that if it were decided that said impost is actually an excise, appellant ESSO would not be relieved from paying it by virtue of said Acts, for the gasoline and fuel which it supplies to the Caribbean Atlantic Airlines, Inc., because the impost or alleged excise is levied and collected from appellant as supplier; that the tax exemption granted to Caribbean Atlantic Airlines, Inc., has no relation whatsoever with the impost levied on appellant by virtue of Act No. 82.

The Caribbean Atlantic Airlines, Inc., requested leave to intervene and its contention is to the effect that the impost of two cents of Act No. 82 is a tax which can only be legally levied by the Legislature of the Commonwealth of Puerto Rico, which has illegally and unconstitutionally sought to delegate such power; that in addition to the fact that such delegation is improper, illegal, and unconstitutional, it was conferred without prescribing the adequate rules and/or standards, and without complying with the requisites of uniformity.

Later on, ESSO and Ports Authority moved for summary judgment in the Superior Court, San Juan Part, since there existed no real controversy between them on any material fact and there only remained the question of law to be decided. Rules 36.1 and 36.3 of the Rules of Civil Procedure.

The trial court concluded that:

"Act No. 82 labels the levying as an 'impost' expressly distinguishing it from the tax which it was meant to substitute. While this legislative label is not conclusive, it is entitled to great weight. See *Porto Rico Telephone Company* v. *Tax Court,* 68 P.R.R. 144, 147–148 (1948). Furthermore, we have seen that actually the Legislature had the unmistakable purpose *of authorizing the levying of an impost,* because this was the only manner to provide appellee with a substitute means to obtain its own revenue without being dependent on the taxing power of the State on which the self-renewable appropriation which was repealed by the provision of § 2 of Act No. 82 itself was based. Finally, it is obvious *that this Act would have been entirely unnecessary if there had not been the intention of substituting the impost for the tax, being fully aware of the distinction between one and the other* and of the legal consequences that it entailed.

. . . . . . . .

"Although literally the impost is levied on gasoline and fuel, and it is collected from the suppliers of such products which operate in the airports, it is perfectly evident that it is levied—since only then the obligation to pay it arises—on the aviation gasoline and fuel supplied in the airports. The fact of supplying the fuel in one of the airports—that is, the specific act of supplying it coupled with the fact that it is supplied in that particular place by a supplier which operates there—constitutes, therefore, the taxable event.

. . . . . . . .

"The impost under consideration in the present case is not levied plainly and squarely on the introduction, sale, consumption, use, transfer, or acquisition of gasoline or fuel in any place in which it may occur in Puerto Rico. It is levied, we repeat, on the supplying of gasoline and fuel in a specific place, like the airports. To supply said products there—and, more concretely to the facts of the present case, at the International Airport in Isla Verde—it is indispensable to use the property, facilities, and services of defendant Authority, which are also utilized by airlines like intervener herein, to supply themselves with gasoline and fuel and for their air transportation operations from and to Puerto Rico.

"The juridical character of the impost involved in this litigation is, therefore, identical to the wharfage charges, the validity of which in the exercise of the property right of the States and its political subdivisions or public instrumentalities has been sanctioned by the Supreme Court of the United States since more than three-quarters of a century ago against the contention that it actually constituted a duty in violation of Art. I, § 10, subdivision 3 of the Federal Constitution, which provides that 'No State shall, without the consent of Congress, lay any Duty of Tonnage. . . .'

"One of the first cases which established the aforementioned distinction between the wharfage charge and the duty prohibited by the Constitution, was *Keokuk N. L. Packet Co.* v. *Keokuk,* 95 U.S. 80, 24 L. ed. 377, 379, 380 (1877).

. . . . . . . .

"It is also plain that the fee or charge may be levied for the purpose of financing capital improvements to provide such facilities and services, as is the case of the impost under consideration herein. And although the charge imposed should be reasonable (a question which is not in issue in this case, since neither plaintiff nor intervener have attacked the reasonableness of the impost), the manner of levying—either on the basis of tonnage, gallonage, or other measure of quantity—is entirely irrelevant to its validity.

. . . . . . . .

"The clear juridical distinction which exists between the levying of a tax and the levying of a wharfage charge or toll, analogous to the one involved herein, becomes still more manifest according to the ruling in *Sands* v. *Manistee River Improvement Co.,* 123 U.S. 288, 31 L. ed. 149 (1887).

. . . . . . . .

"Since the Legislature could validly fix the impost as it did in approving Act No. 82, the only question which could be raised against its validity is that concerning its reasonableness. Although this question is not raised in this case, it is convenient to examine it briefly for the sole purpose of showing even more clearly that the impost under consideration is really reasonable and that its imposition is legally justified.

"... The Act which authorized the levying of the impost does not grant any exemption whatsoever, nor does it authorize defendant or the Economic Development Administrator to grant it. Consequently, said contractual provision is null and void as being in contravention of the law which regulates the levying and collection of the impost. Section 1207 of the Civil Code, 1930 ed., 31 L.P.R.A. § 3372. This is likewise applicable to § 9 of the Regulations of the Economic Development Administrator, insofar as said section may be construed as having the same scope of Art. 8 of the Supplemental Agreement." (Italics ours.)

Appellant and intervener assign that the trial court erred in deciding that (1) the real legislative intent was to authorize the imposition of a fee different in nature to the tax to be substituted; (2) the levying of the "fee" as such is legally justified; (3) the contractual provision of Art. 8 of the Supplemental Agreement of August 17, 1960, which provided that the so-called "fee" would not be collected on fuel delivered into aircraft of airlines exempted from the tax, is null and void; (4) that intervener's tax exemption did not include the impost in question; and (5) in failing to declare said Act No. 82 unconstitutional.

Intervener argues that (a) from the text of the aforementioned Act No. 82 and from the two reports related thereto, it is inferred that the Legislature understood that the so-called "fee" per gallon of airplane gasoline was really and specifically a duty; that said legislative body "identified the terms 'fee,' 'tax,' 'impost,' and 'excise tax,' using them indistinctly, in approving Act No. 72 of 1962 and the aforementioned Act No. 82 of 1959"; that it was thus acknowledged in Res. No. 364 of June 29, 1960, of the Economic Development Administrator and in Art. 8 of the Supplemental Agreement executed by appellant and appellee; (b) "the label affixed by a statute whereby a tax is imposed, is entitled to great weight . . . *it is not controlling* and the specific language of the statute and the practical operation of the tax

operates over its descriptive label." *Porto Rico Telephone Company* v. *Tax Court*, 68 P.R.R. 144 (1948) ; (c) that historically, duties have been levied on gasoline to defray the use of the property, facilities, and services (cost of. highways), and no one has ever thought of calling said charge by any other name than that of "excise" or "tax"; (d) "if the aforementioned 'fee' is one for facilities and services rendered by the Ports Authority in the airports, then, to pay other rates, landing fees, and rentals for the same services and facilities would be to pay in multiple ways at least, for the same services which, if not illogical, is clearly abusive and illegal." This last argument was not raised in the trial court, nor was the reasonableness of the amount of the "fee" questioned.

■■ We shall first consider the last assignment, since the first two depend on its solution.

1—At the outset, it is necessary to remember the standards of self-restraint which should guide us in passing upon the constitutional validity of legislative measures. We recited them in *Commonwealth* v. *Aguayo*, 80 P.R.R. 534, 576, 577 (1958). Furthermore, we have held that a statute is and is presumed to be constitutional until otherwise held by a competent court. *People* v. *Pérez*, 83 P.R.R. 518, 523 (1961). A statute is to be given a sensible construction; and a literal application of a statute, which would lead to absurd consequences, should be avoided whenever a reasonable application can be given to it, consistent with the legislative purpose. *People* v. *Mantilla*, 71 P.R.R. 35 (1950) ; *Kovacs* v. *Cooper*, 336 U.S. 77 (1949) ; *Lynch* v. *Overholser*, 369 U.S. 705 (1962) ; *People* v. *Wabash R. Co.*, 62 N.E.2d 819 (Ill. 1945).

■ Section 2 of Art. VI of the Constitution of the Commonwealth of Puerto Rico provides that the power of the Commonwealth of Puerto Rico to impose and collect taxes and

to authorize their imposition and collection by municipalities shall be exercised as determined by the Legislative Assembly *and shall never be surrendered or suspended.* Since tax exemptions are derogations of the power of a state, they must not extend beyond the express and exact terms of the statute granting them and every doubt must be resolved against exemption from taxation, *Texas Co. v. Tax Court; Descartes, Int.,* 82 P.R.R. 129, 154 (1961). *Cf. American Nat. Bldg. v. City of Baltimore,* 224 A.2d 883 (Md. 1966), except when a contrary construction is justified for the purpose of implementing the legislative purpose. *Textile Dye Works, Inc. v. Secretary of the Treasury, ante,* p. 692.

■ Lastly, it is evident that every person is entitled to collect a charge or fee for the use of its property by another person. Appellee has been granted said power. (23 L.P.R.A. § 336(*l*).)

Section 19 of the Civil Code (31 L.P.R.A. § 19) now in force provides that:

"*Reason, spirit, and motives of law*·

"The most effectual and universal manner of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit thereof, or the cause or motives which induced its enactment."

■ In *Coll v. Sec. of the Treas.,* 82 P.R.R. 26 (1960), we concluded, in effect, that the statute should be construed taking into consideration the purposes sought and in the sense most suitable to the "rational basis or essential purpose thereof," and the public policy underlying the statute.

■■ From the Act itself it is evident that the legislative intent was to authorize the levying of an impost, since this is the only manner to make the Ports Authority self-sufficient. But said impost was not levied on the introduction, sale, use, or consumption of aviation gasoline in Puerto Rico, but on the gasoline furnished by the suppliers who operate in the

airports. It is the fact of supplying the fuel in one of the airports of the Ports Authority what generates the levying and collection of the impost. This impost is not levied on the sale of gasoline but on the use of the facilities and services which the Ports Authority maintains on its property for the purpose of supplying said gasoline. Its juridical nature is therefore different from the duty or tax it substituted. The impost in issue is a charge levied on the use of the facilities furnished by the Authority under § 6(l) of Act No. 125 of May 7, 1942 (23 L.P.R.A. § 336(l)), and by special authorization of the Legislature.

We understand that it was the purpose of the Legislature to provide the Ports Authority with its own revenue, independent from the taxing power of the State, for the financing of capital improvements. For that purpose it authorized appellee to levy an *impost so characterized* to distinguish it from the tax it suspended. And said characterization deserves great weight.

Taxes are levied for the sole purpose of producing revenues. In this case the impost does not seek said purpose, but to produce income to a public instrumentality for the necessary and adequate financing of its aims and purposes.

Nor is it illegal. The impost levied is based on the volume of gasoline and fuel supplied by appellant to the intervener in the airports of Puerto Rico. Said supply is directly related to the use of the facilities and of the property which appellee maintains for air transportation. It is evident that the impost based on the volume of aviation gasoline and fuel is related to the use of the facilities and property of the Ports Authority.

Summarizing, from the foregoing it is evident that the impost, which the Legislature authorized appellee to collect, is actually a fee for services and use of facilities and not

a tax like the one it substituted, and therefore, its authorization is not unconstitutional or illegal, since:

(1) it is collected for the use of facilities to supply fuel to airlines in the airports, and not for the introduction, sale, use, and consumption of said fuel; neither appellant nor the intervener have questioned this conclusion of the trial court, but they simply argue that said "fee" does not correspond and is not equivalent to a payment for any service rendered by appellee;

(2) the proceeds obtained from the collection of said impost is deposited in appellee's funds to render possible its financing; it does not constitute revenue of the State or Municipality;

(3) the Legislature may authorize public corporations to charge for its services and for the use of its facilities, and it has done so when in its opinion it has deemed it wise and necessary for the promotion or fulfilment of a public policy or purpose.

2-3—The preceding reasoning also disposes of the first two assignments of intervener by virtue of which it challenges (a) the conclusion that the nature of the impost in issue is different from that of a tax, and (b) the legality of said impost.

4—Intervener also assigns that the agreement of not collecting the impost on fuel supplied to it as airline exempted from the payment of all insular, local, and municipal taxes of whatever name or nature . . . "including all imposts and excises," is not null and void, as the trial court concluded, because Act No. 17 of April 11, 1939, which provided for such exemption "in the terms in which it is drafted is a special statute which had to be honored by defendant or the Economic Development Administrator." This argument parts from the assumption that the "fee" in issue is actually a tax or excise when we have previously shown that it is not.

We conclude that the trial court did not err in determining, in support of this conclusion, that "the Act which authorized the levying of the impost does not grant any exemption whatsoever nor does it authorize defendant [appellee herein] or the Economic Development Administrator to grant it. Consequently, said contractual provision is null and void as being in contravention of the law which regulates the levying and collection of the impost. [Section 1207 of the Civil Code, 1930 ed. (31 L.P.R.A. § 3372).] This is likewise applicable to § 9 of the Regulations of the Economic Development Administrator, insofar as said section may be construed as having the same scope of Art. 8 of the Supplemental Agreement." *Infante* v. *Board of Medical Examiners*, 84 P.R.R. 296, 301 (1961); *Puerto Rico Ilustrado* v. *Buscaglia, Treas.*, 64 P.R.R. 870, 891 (1945).

■ 5—Intervener maintains that the tax exemption included the "fee" in issue, and in support of this theory it cites *West India Oil Co.* v. *Tax Court*, 65 P.R.R. 70 (1945).

The difficulty with this contention is that Act No. 17 of April 11, 1939, subsequently extended by Act No. 135 of 1945 and Act No. 20 of 1954, refers to taxes and imposts of a fiscal nature, but in nowise to imposts of the nature of the one in question. The Superior Court interpreted it thus. "To decide otherwise would logically entail the absurd result that said tax exemption also included the payment of the rates, fees, rentals, and other charges fixed by defendant Authority under § 6(*l*) of the Act which created it, for the use of the facilities or services furnished by it in the airports of Puerto Rico. This is the inescapable result because the rates, fees, rentals, and other charges that it is therein authorized to fix are juridically of the same nature of the two-cent impost which was authorized by Act No. 82 of 1959. We believe that plaintiff and not even the intervener would subscribe to this result." We agree with these conclusions.

 Intervener calls our attention to the fact that Act No. 17 of April 1939 (13 L.P.R.A. § 194) in its English text says that the tax exemption includes "all imposts" and that the term "impost" appears in the English text of Act No. 82 wherever the term *"derecho"* appears in the Spanish text. Since the aforementioned Act No. 82 originated in the Legislature in its Spanish text, the latter version should prevail. Section 13 of the Civil Code (31 L.P.R.A. § 13).

In view of the foregoing, the judgment rendered by the Superior Court in this case is affirmed.