Edwin Hancock, Appellant, v. Village of Hazel Crest, Appellee.

Gen. No. 42,297.

Opinion filed March 22, 1943.

STEVENS & STEVENS, of Chicago, for appellant; GEORGE M. STEVENS, of Chicago, of counsel.

FRANCIS A. HARPER, of Chicago, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

Plaintiff is a civil engineer. He sued to recover from the defendant, a municipal corporation, $13,340, as the reasonable value of services rendered by him to the defendant in connection with the proposed construction of a new sewage system or remodeling defendant's old system. The cause was heard by the court on the pleadings and a stipulation by the parties as to the facts. There was a finding for defendant with judgment thereon, and plaintiff appeals.

It appears that it was the contemplation of the parties that the proposed improvement would be made pursuant to section 62 of the Cities and Villages Act (Smith-Hurd's Ann. Stats., ch. 24, §§ 62—1 to 62—12 [Jones Ill. Stats. Ann. 21.2029 to 21.2040]). The section in substance provides that a municipality may by compliance therewith construct a sewerage system and pay for the same out of revenue bonds which are limited in payment to revenues to be derived from the improvement itself. Plaintiff contends (and, as we understand it, the defendant does not deny) that had this plan been carried out, no additional debt within the meaning of section 12, article 9 of the Constitution of Illinois would have been created. The act, however, provides that after publication or. posting of the ordinance providing for such an improvement, if no petition is filed with the municipal clerk for an election, the ordinance shall be in effect. But if within 10 days a petition is filed with the clerk by 15 per cent of the voters at the last general municipal election, the question of constructing or improving the sewerage system as provided in the ordinance and the issuance of the revenue bonds to provide for the payment therefor shall be submitted to a referendum vote of the electors. If a majority of the votes cast on the election are unfavorable the municipality shall proceed no further and the ordinance shall not take effect. Such petition was filed within the time required; the vote was taken; it was against making the improvement, and the Village abandoned it.

At the time the proposed ordinance for making the improvement was passed and when it was abandoned and since, liability on the part of the Village for the amount claimed by plaintiff would create a situation in which the amount of its indebtedness would exceed the constitutional limitation of 5 per cent of the value of the taxable property in the defendant municipality. The assessed value of all property in the Village for the year 1939 was $503,997. Its debts on September 20, 1939, were over $30,000. The proposed improvement was to cost $296,000.

The stipulation concedes that plaintiff was at all times ready and willing to perform the duties required of him by the terms of his employment and that the reasonable value thereof is the amount he claims. The defense interposed is that the contract under which plaintiff claims was illegal as creating an indebtedness beyond that permitted by section 12 of article 9 of the Constitution. It is as follows:

"No County, City, Township, School District or other Municipal Corporation shall be allowed to become indebted, in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum of the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes, previous to the incurring of such indebtedness."

Notwithstanding, plaintiff argues his right to recover upon the theory, as stated in his brief, that "the defendant having abandoned the project, payments that were to be contingent upon the realization of funds to become available by the carrying out thereof, become by operation of law, payable out of the general fund, and that recovery in such an action in *quantum meruit,* for the value of services rendered under such a liability imposed by law, is not within the constitutional limitations in regard to the creation of indebtedness."

The brief for plaintiff discloses great diligence in the collection of cases which, it is argued, sustain this theory. We deem it unnecessary to analyze many of these cases for the reason that no contention was made in them that the constitutional limitation was applicable. This is true of *Gray v. City of Joliet*, 287 Ill. 280; *Hall v. County of Cook*, 359 Ill. 528; *Bunge v. Downers Grove Sanitary Dist.*, 356 Ill. 531, and *Elmhurst Bank v. Village of Bellwood*, 372 Ill. 204 the principal cases relied on.

There is no doubt of the general rule as stated in McQuillin, Municipal Corporations, Second Edition, Revised, vol. 6, § 2376, ch. 41, p. 34, that "Provisions as to debt limits, apply only to indebtedness which arises *ex contractu* and do not apply to involuntary liability arising *ex delicto*. Hence, the fact that a municipality has exceeded its debt limit is no defense to an action based on a tort." The author, however, goes on to state that it has been held in Pennsylvania that when "the act which is called a tort is done under a contract, and the assumption of the consequent damages is an express term of such contract, we have a perfectly clear case outside of the principle that makes municipalities liable for their wrongful acts, without regard to their indebtedness, and within the constitutional prohibition of a contractual obligation to pay in the future for a consideration in the present."

The gist of plaintiff's contention seems to be that liability in *quasi* contract to suit on a *quantum meruit* grows out of a liability imposed by law independent of the agreement of the parties and is, therefore, not a voluntary assumption of liability and therefore not subject to constitutional limitation. He argues that because the obligation is created by law independent of the will of the parties, such an obligation is not a debt within the meaning of the Constitution. The nature of *quasi* contractual liability is discussed by Justice Vickers in *Board of Highway Com'rs v. City of Bloomington*, 253 Ill. 164.

In Williston on Contracts, Rev. Ed., vol. 1, § 3, pp. 6–10, the author says:

"The expression 'implied contract' has given rise to great confusion in the law. Until recently the divisions of the law customarily made coincided with the forms of action known to the common law. Consequently, all rights enforced by the contractual actions of assumpsit, covenant, and debt were regarded as based on contract. Some of these rights, however, were created not by any promise or mutual assent of the parties, but were imposed by law on the defendant irrespective of, and sometimes in violation of, his intention. Such obligations were called implied contracts. A better name is that now generally in use of 'quasi contracts.' This name is better since it makes clear that the obligations in question are not true contracts, and also because it avoids confusion with another class of obligation which have also been called implied contracts. . . . It is important to distinguish between quasi contracts and contracts implied in fact, not only because it is desirable for clear theoretical analysis, but also because of the difference in the legal relations which may be involved under a true contract and those imposed by law under the name of quasi contract. In the first place as quasi contractual obligations are imposed by the law for the purpose of bringing about justice without reference to the intention of the parties, the only apparent restriction upon the power of the law to create such obligations is that they must be of such a sort as would have been appropriately enforced under common-law procedure by a contractual action. Indeed even this limitation is too narrow, for a bill in equity or a libel in admiralty might be the appropriate means of enforcing some quasi contractual obligations."

It would be inaccurate to say that such contracts are involuntary, although it is true that the notion of a contract in such a case is often purely fictitious.

However, that is not the case here. The parties were all quite aware of the contingencies from which plaintiff now argues obligation. All parties had in mind the statute pursuant to which the sewerage system in question was to be constructed. Defendant must have known and plaintiff well knew that the construction of the system and the procurement of funds to pay therefor were subject to the contingencies set forth in the statute. Everybody knew that a majority of those voting would have the right to prevent the construction of the improvement. There is nothing in the stipulation disclosing any wrong to plaintiff. It was the right of the electors to petition for a referendum. They complied with the conditions. It was then the duty of the Village authorities to hold the election. Just how the exercise of these legal rights and the performance of these legal obligations can be held to be a legal wrong is difficult to perceive. Plaintiff is not entitled to recover on any theory. This constitutional limitation was considered in the case of *Litchfield v. Ballou,* 114 U. S. 190, by the Supreme Court of the United States. In that case a creditor who had purchased bonds issued by a city for the construction of public works (the bonds having been held void by reason of this constitutional limitation) sued in chancery claiming an equitable lien against the improvement, which he said had been constructed with money furnished by him. He obtained a decree allowing such a lien which the Supreme Court reversed, the opinion being delivered by Mr. Justice MILLER. After holding that the jurisdiction was at law rather than in equity the opinion said:

"But there is no more reason for a recovery on the *implied* contract to repay the money, than on the *express* contract found in the bonds.

"The language of the Constitution is that no city, etc., 'shall be allowed to become *indebted in any manner or for any purpose* to an amount, including, existing in-

debtedness, in the aggregate exceeding five per centum on the value of its taxable property.' It shall not *become indebted.* Shall not incur any pecuniary liability. It shall not do this in *any manner.* Neither by bonds, nor notes, nor by express or implied promises. Nor shall it be done for *any purpose.* No matter how urgent, how useful, how unanimous the wish. There stands the existing indebtedness to a given amount in relation to the sources of payment as an impassable obstacle to the creation of any further debt, in any manner, or for any purpose whatever.

"If this prohibition is worth anything it is as effectual against the implied as the express promise, and is as binding in a court of chancery as a court of law."

The cases from different jurisdictions (and there are many States which have similar constitutional limitations) are collected in 37 L. R. A., New Series, p. 1058, in a note to *Hagan v. Comissioners' Court,* 160 Ala. 544, 49 So. 417. It is pointed out at page 1072 that the restriction does not apply to contracts for local improvements where the cost is to be borne wholly by property benefited or to improvement bonds. At page 1086 the author states there is a conflict of authority as to whether the debt limit applies to obligations imposed by law upon States and municipalities as distinguished from those that are discretionary or voluntary, and that this has been a troublesome question for the courts. At page 1091 it is said:

"If the obligation is one which, as already stated, is discretionary, it falls within the inhibition of the debt limit provisions."

The Illinois decisions hold the limitation applies even to obligations imposed by law. *City of Springfield v. Edwards,* 84 Ill. 626; *Law v. People ex rel. Huck,* 87 Ill. 385; *Prince v. City of Quincy,* 105 Ill. 138. Illinois is not alone in this construction. *Mc-*

*Gillivray v. Joint School Dist.,* 112 Wis. 354, 88 N. W. 310, 88 Am. St. Rep. 969, 58 L. R. A. 100; *Pittsburgh Paving Co. v. City of Pittsburgh,* 332 Pa. 563, 3 A. (2d) 905.

The only Illinois case cited in the brief which seems to give color to plaintiff's contention is *Chicago v. Sexton,* 115 Ill. 230, 245. The same case was before the Supreme Court in *Sexton v. Chicago,* 107 Ill. 323. It seems that Sexton had a contract with the City to construct iron work for the City Hall; that he made his bids for the work on plans and specifications that were prepared by the city engineer, but it developed that the plans and specifications which were furnished to him were not like other plans which the City had kept in its own files and in which changes were made. Sexton in good faith and without notice of these changes made his bid accordingly. The City terminated the contract. Sexton was allowed to recover on *quantum meruit.* The court said in substance the City was wholly responsible for the mistake out of which the entire controversy arose and that the mistake made a difference in the cost of the building of from $8,000 to $10,000; that it was inequitable and unjust to blame Sexton for a thing which was "the direct result of the City's own negligence." The question of constitutional debt limitation was not raised in the briefs of the parties, and the statement of the opinion on that matter was merely obiter. It does not justify plaintiff's position.

In the opinion by the trial judge he correctly, we think, distinguished that case saying:

"In the case at bar, where is any want of fidelity on the part of the Defendant Village? Its officials and the engineer all went into a contract to do this work with full knowledge that the law provided the voters of the Village could veto the ordinance if they so desired. The people of the Village were not a party

to that contract unless, as suggested by the Counsel for the Plaintiff, it be held that the Mayor and the Village Trustees were their agents. . . . The very fact that the Statute gave the people of Hazel Crest the right to veto the ordinance adopted by the City Council shows that the legislature did not make the city officials the agents of the people to bind those people.''

The trial court reached the correct conclusion. The judgment will be affirmed.

*Affirmed.*

O'Connor and McSurely, JJ., concur.