(No. 27834.—

THE PEOPLE *ex rel.* A. R. Manifold, County Collector, Appellant, *vs.* CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellee.

*Opinion filed March 21, 1944.*

SAMUEL JOSEPH NAYLOR, State's Attorney, of Carthage, for appellant.

EDWARD C. MACK, of Carthage, and C. W. KROHL, of Chicago, (ELDON M. MARTIN, of Chicago, of counsel.) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

The county treasurer and collector of Hancock county made application for judgment against real property returned delinquent for the taxes of 1941 and prior years. The appellee, Chicago, Burlington and Quincy Railroad Company, paid certain taxes under protest and filed objections to the validity of the school taxes in Districts No. 37, No. 118, and No. 177 of said county. Upon a hearing, the county judge entered an order sustaining such objections and ordered the county treasurer to return to appellee all of the amounts thereof paid under protest.

The objections to the taxes for Districts No. 37 and No. 177 were sustained because it appeared the budgets

made by the districts were adopted after the dates of the levies. In District No. 37 the certificate of levy is dated June 30, 1941, and filed August 12, 1941, and the budget was adopted July 28, 1941. In District No. 177 the certificate of levy is dated June 17, 1941, was filed with the county clerk August 12, 1941, and the budget adopted July 18, 1941. The objection to the taxes in District No. 118 was that when an increase was made in the statutory rate under an election held in 1928 the form of the ballot used was improper, and therefore the election raising the rate invalid. This objection was sustained by the county court.

The controversy involving the first two items grows out of the construction of the Illinois Municipal Budget Law of 1937. (Laws of 1937, page 1037.) Under that statute municipalities and political subdivisions were required to adopt a budget within the first quarter of the fiscal year. Counties, cities, villages and incorporated towns and sanitary districts, and the taxing bodies of Cook county, which was of more than 500,000 population, were excepted from the act. This apparently left school districts with a population of less than 500,000 under the operation of the act.

In 1939 the statute was amended and section 3-a added, which provided school districts governed by a board of directors should not be required to comply with the budget provisions if the board should post notices of its claim for State aid, in accordance with certain requirements of the Superintendent of Public Instruction. The act, as amended in 1939, contains the following provisions: "Sec. 4. The failure by any governing body of any municipality to adopt an annual budget and appropriation ordinance, or to comply in any respect with the provisions of this Act, shall not affect the validity of any tax levy of any such municipality, otherwise in conformity with the law. The failure by the board of directors of any school district governed by a board of directors to comply with the provisions of Sec-

tion 3 of this Act shall not affect the authority of such board of directors or school district to make expenditures." Laws of 1939, page 876.

In 1943 the statute was again amended and also excepted from the operation of the act "school districts governed by boards of school directors," section 3-a of the act of 1939 was repealed, and section 4 restored to its original form, as contained in the Laws of 1937, the same being the first sentence only of section 4, as quoted above. Laws of 1943, page 1061.

The statute as enacted in 1939 is applicable to the prent controversy. The act required the governing body of any municipality coming within its provisions during or before the first quarter of each fiscal year to adopt a combined annual budget and appropriation ordinance, by which ordinance it shall appropriate such sums of money as may be deemed necessary to defray all necessary expenses and liabilities, and shall specify the objects and purposes for which said appropriations are made, and the amount appropriated for such object or purpose. It also requires a statement of its actual assets, and the estimate of cash expected to be received during the fiscal year, and the estimate of the expenditures for the same year. It is required to be published or posted, and prohibits any further appropriations at any other time during the fiscal year, except as provided by law, but permits the municipality from time to time to make transfers between the various appropriations not exceeding in the aggregate ten per cent of the amount of each appropriation, and may amend the budget, provided it is done in the same manner as required in the first instance. It also contains a provision that the Tax Commission shall furnish certain forms and collect copies of the several budgets with respect to each municipality in the State, and publish, annually, a statistical summary, and, also, give advice to the officers of such municipalities with respect to their budget procedure; but,

however, such Tax Commission is not permitted to interfere with such municipalities or their officials in the enforcement of the Budget Law.

The act also requires such municipalities to fix the fiscal year. There is only one requirement in the statute wherein the budget is to be adopted prior to the tax levy, and that is where the beginning of the fiscal year is subsequent to the time of the tax levy for that year. Under the statute the fiscal year of a school district is from July 1 to June 30, (Ill. Rev. Stat. 1943, chap. 122, pars. 36 and 212,) unless otherwise fixed by the municipality. It does not appear in the record that any other fiscal year has been fixed. Aside from this one instance the requirement of filing a budget is that it shall be within or before the first quarter of each fiscal year. There is no condition precedent contained in the law that the budget shall be adopted prior to the tax levy, except in the one instance above pointed out.

It seems rather apparent that the legislature desired conformity in the manner of budgeting expenses throughout the State, and the publication of information that would require municipalities to use the money for the purposes appropriated and inform the taxpayers as to the amount and the use for which taxes were raised, but there is no indication that the budget was to be a preliminary requirement to the levying of a tax. The law is general in its application to those bodies included, and is intended to bring about uniform specification and classification of revenue and expenditure by providing the forms used in the budget be furnished by the Tax Commission. If there was any doubt that this is the correct construction it would be removed by the provision of section 4, which expressly provides that the failure by the governing body to adopt the annual budget and appropriation ordinance, or to comply in any respect with the provisions of the statute shall not affect the tax levy of any municipality otherwise in conformity with the law.

This provision in the statute, the provision that funds may be transferred from one fund and used in another fund in a limited amount, and the prohibition of making further appropriations, indicate that the Illinois Municipal Budget Law was enacted for uniform accounting purposes, and not as a condition precedent to the levying of a tax. In this case the fiscal year did not begin subsequent to the time for fixing the tax levy, and therefore is not within the sole provision of the act fixing a time for filing a budget with respect to the time for levying the tax. Of course, where the budget and appropriation ordinance has been made, no expenditure in excess of the sum provided for in the same is permissible. *People ex rel. Larson* v. *Thompson*, 377 Ill. 104.

Many cases have been cited by appellee with respect to the necessity for complying with the appropriation ordinances for cities and villages and under the budget statutes applying to municipalities having a population in excess of 500,000, but an examination of the cases will disclose that in all of those cases there was an express provision that the appropriation or budget ordinance was a requirement precedent to and an integral part of the scheme of taxation, and consequently they have no application to the present situation. We are of the opinion the court was in error when it sustained objections to the taxes for School Districts No. 37 and No. 177.

The objection to the tax in District No. 118 is that the proper form of ballot was not submitted to the voters to increase the tax rate from one to one and one-half per cent for educational purposes, and from three-eighths of one per cent to one-half of one per cent for building purposes, because it did not give the option to vote upon them separately. The election took place in 1928. None of the ballots used in that election have been found. The only evidence as to what took place at the election is the certificate of the secretary of the board of education filed with

the county clerk April 19, 1928. The certificate is in the following form:

"I hereby certify that at a meeting of the Board of Education held on April 2nd, 1928, the Board of Education of Carthage School District, Number 118, in Hancock County, Illinois, adopted a resolution to submit to the voters of this district the proposition for assent to increasing the levy and the following proposition was voted on April 14th, 1928.

" 'Proposition to authorize the Board of Education of Carthage School District, Number, 118, County of Hancock and State of Illinois, to levy in any one year more than one per cent (1%) but not more than one and one-half per cent (1½%) upon all taxable property in said district for educational purposes and more than three-eighths of one per cent (⅜ of 1%) but not more than one-half of one per cent (½ of 1%) on all taxable property of said district for building purposes.'

"I hereby certify that at the election so held on April 14th, 1928, that the proposition was carried and was assented to by the electors of this district and that the Board of Education now has the authority to levy not more than one and one-half per cent (1½%) for educational purposes and not more than one half of one per cent (½ of 1%) for building purposes."

The tax has been extended and levied every year since that date.

Facts quite similar were under consideration in *People ex rel. Hempen* v. *Baltimore and Ohio Railroad Co.* 379 Ill. 543, where the only evidence consisted of the certificate of the secretary, in almost the same form as here. In that case objection was made that the election was invalid because of the propositions being so interwoven that a voter who favored the increasing of the educational tax, in order to vote, would necessarily have to vote for increasing the building tax. We said in that case: "The contention of appellants is based upon the assumption that the form of the ballot was in exactly the same language as the certificate of election which was filed in the office of the county clerk. * * * The certificate does not state what the form of the ballot was in that election; it merely states the result of the election. Twenty years have gone by, apparently

without the question being raised, until some one referred to the old file and found the certificate of election, which may have had a ballot in proper form, or may have had a ballot embodying both items contained in the certificate. This is not sufficient at this late date to show what the form of the ballot was, * * *. It is sufficient for the purposes of this case to hold there is nothing· in the record which shows there was not a ballot in proper form submitted to the voters, * * *."

The certificate in the instant case does not purport to set forth the form of the ballot, nor to do any more than to advise the county clerk of the rate to which the tax was raised, and that a specified increase in rates had been carried. Appellee introduced another certificate dated June 15, 1940, by a subsequent secretary of the board of education. Apparently it was filed because they had been unable to find the original certificate in the office of the clerk, but this last certificate does not help the appellee, because not only is the form of the ballot not shown, but it appears that notice of the proposition was given, as provided by law. There is no requirement in ·the statute that the ballots of a school election be preserved, or that the form of the ballot by which the election was carried out be certified to the county clerk. The requirement that a certificate be filed with the county clerk is to enable him to extend the taxes at the proper rate. When he has a certificate that the rate has been increased over the minimum fixed by the statute he has a right to extend the rate, and to assume the officials have complied with the law. The burden of establishing the invalidity of a tax rests upon the objector, and in the absence of proof to the contrary it is presumed just and that the officers levying it have properly discharged their duties. *People ex rel. Thompson* v. *Hulin,* 237 Ill. 122; *People ex rel. Stuckart* v. *Sandberg Co.* 277 Ill. 567; *People ex rel. Gill* v. *110 South Dearborn Street Corp.* 363 Ill. 286.

We do not think the objector has established that the ballots submitted at the election failed to comply with the requirements of the law, and it should not be permitted, after the lapse of a great many years, to rely upon mere recitals in the certificate of the election to establish that the ballot was not in proper form.

We think the county judge was in error in sustaining the objections of appellee. The judgment of the county court of Hancock county is reversed, and said cause remanded with directions to overrule the objections and to enter judgment in favor of appellant.

*Reversed and remanded, with directions.*