KURIAN C. MATHEW, Plaintiff-Appellant, *v.* THE TOWN OF ALGONQUIN, Defendant-Appellee.

(No. 71-36;

Second District—February 1, 1972.

Bernard V. Narusis, of Cary, for appellant.

Perry L. Weed, of Crystal Lake, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

This appeal arises from a suit by Kurian Mathew, plaintiff, to obtain payment for engineering services rendered to defendant township, Town

of Algonquin, in connection with a road improvement project which was not completed following a decision of the Illinois Supreme Court that the 1870 Illinois Constitution did not permit a legislative grant of authority to townships to make local improvements by special assessment. *Committee of Local Improvements of the Town of Algonquin v. Objectors* (1968), 39 Ill.2d 255, 234 N.E.2d 775 held the 1965 statute commonly known as the Township Local Improvement Act invalid. Ill. Rev. Stat. 1965, ch. 139, par. 143.101 through 143.161.

Acting within the apparent authority of the 1963 predecessor statute authorizing local improvements by townships, (Ill. Rev. Stat. 1963, ch. 139, par. 143.1 through 143.5), the electors of Algonquin Township, convened in annual meeting, by resolution directed the Committee on Local Improvements of Algonquin Township to prepare the plans, specifications, estimate of cost and resolution for the improvement of certain described roads and a grade separation over a waterway within the township. Under the statute, the Committee was composed of the township supervisor, the highway commissioner, and the three elected or appointed town auditors. The Committee subsequently entered into a written contract incorporating the elector's resolution and employing plaintiff to prepare plans and estimate of costs, agreeing to pay him for his services a specified percentage of the estimated cost.

In a memorandum opinion, the trial court indicates that after the cause was at issue, defendant filed a motion to dismiss based on the decision of invalidity in *Com. Local Improvements v. Objectors, supra,* which was granted with leave to plaintiff to plead further. Plaintiff filed an amended complaint based on an implied contract or *quantum meruit* theory seeking payment of a balance owing of $2,937.79 which the trial court discussed in a second memorandum opinion and dismissed with prejudice, finding no just cause to delay enforcement or appeal as to plaintiff's cause. The counterclaim in which Algonquin Township seeks recovery back from plaintiff of $4,896.31 previously paid to him for services remains standing until disposed of by the trial court.

Among other contentions, plaintiff urges that denial of compensation for professional services rendered in good faith violates the due process guarantees of the United States and Illinois Constitutions and offends Article II, Section 19 of the 1870 Illinois Constitution wherein it was provided that every person ought to find a remedy for all injuries and wrongs received. This appeal was originally filed in the Illinois Supreme Court, Civil Docket No. 43660, and was transferred to this court with a docket opinion that the trial court dismissed the complaint for services rendered to the township on the grounds that the Act authorizing public improvements to be paid for by special assessment was invalid and that

the contract entered into by the township was *ultra vires*. The docket opinion states that the ruling of the trial court presents no debatable constitutional question as to the invalidity of the statute, and that the only other question is whether the doctrine of *ultra vires* was properly applied. Thus we do not consider constitutional claims in this opinion, and turn to plaintiff's remaining contentions.

Plaintiff suggests an analogy to *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill.2d 11, 163 N.E.2d 89, abolishing immunity of school districts from tort liability and urges us to reject as unsound the judicially created doctrine that a municipality may repudiate *ultra vires* contracts. It is obvious and conceded that application of this doctrine to bar plaintiff's recovery for the reasonable value of his services imposes upon him a hardship without his fault, but the conflicting rights are those of plaintiff individually against the right of all citizens and taxpayers collectively to limit governmental contracts and consequent expenditures of public funds to those provided for by law. The *Molitor* decision (18 Ill.2d at 20) dealt with tort rather than contract liability, and the conflict concerned the doctrine of governmental immunity as opposed to the basic concept underlying the law of torts that liability follows negligence. We do not find *Molitor* authority for abrogating all judicially created doctrines involving a harsh result for individuals, and additionally believe it would be inappropriate to undertake abolition of the defense of *ultra vires* as a limitation upon the contractual power of governmental entities at this judicial level.

■■ In reliance on *Hall v. County of Cook* (1935), 359 Ill. 528, 195 N.E. 54, plaintiff argues that the usual rule that estoppel cannot be pleaded against a municipality should not apply here because the complaint alleges defendant township appropriated funds, levied and collected taxes for payment of engineering and legal fees connected with the improvement project, paid attorneys fees, and received and accepted the benefit of plaintiff's services, and under these circumstances is estopped to deny liability to pay for such services. Although a motion to strike the complaint admits all well pleaded facts to be true, (*Awe v. Striker* (1970), 129 Ill.App.2d 478, 480, 263 N.E.2d 345), a distinguishing feature of the *Hall* case, wherein an architect was held entitled to recover fees for services rendered, was the existing power in the county to construct the building in question without the further enabling legislation which had been held void to the extent it authorized a tax in excess of a constitutional limitation. In a later case the claimants contended that even though their contracts were *ultra vires* and void, the county was estopped from denying liability because it had received the benefits of their services, and the court said:

"Such contention ignores the distinction made in many cases between contracts of a municipality which are *ultra vires* for want of power to make and which are wholly void, and those cases where the municipality had the power to act but by reason of an improper exercise of the power the contract is void. The *Hall* case * * * (is) of the latter class." *Ashton v. County of Cook,* 384 Ill. 287, 301, 51 N.E.2d 161, *cert.* den. 322 U.S. 731 (1943)."

We come then to the principal issue in this appeal: whether defendant township had the power to procure plaintiff's professional services for the purpose of preparing plans, specifications and estimate of costs for road improvements under any specifically granted or necessarily implied authority other than the invalid Township Local Improvement Act. Plaintiff argues that the township and its electors possessed broad general powers sufficient to authorize the obligation incurred, citing various sections of the Illinois statutes appearing in Chapter 139, Township Organization. If his position is correct, plaintiff's employment is not *ultra vires* the corporate authority of the township in the primary sense and this defense will not avoid his recovery for the reasonable value of his services even though they were irregularly procured.

The parties apparently assume and agree that had the work continued and had the decision of invalidity in *Committee of Local Improvements v. Objectors, supra,* not intervened, the project would have been financed by special assessment. We do not consider the number of township residents who might have benefited from the project as it is dehors the record. Defendant's principal response to plaintiff's claim of authority under general powers is that his compensation was limited to special assessment proceeds which never came into being, citing Ill. Rev. Stat. 1967, ch. 139, par. 143, 133. In its memorandum opinions the trial court also cited the 1967 and 1965 statutes in discussing the Local Improvement Act, reasoning plaintiff had contracted pursuant to the statute and thus had agreed to limit his compensation to a special assessment source. It was further reasoned that if plaintiff had expressly agreed to limit his compensation to this source he could not expand his claim to payment from general funds under an implied contract theory, as the law will not imply an agreement which would be illegal if it were express. *Koons v. Richardson* (1923), 227 Ill.App. 477, 487.

We believe the premise erroneous, however, as the resolution and employment contract were not pursuant to the 1965 Township Local Improvement Act but rather to the 1963 Act (Ill. Rev. Stat. 1963, ch. 139, par. 143.1 to 143.5) which did not contain a similar limitation on the source of payment. Both the 1963 Act and the 1965 Act have since been repealed. Ill. Rev. Stat. 1963, ch. 139, par. 143.5, provided that the pro-

cedure to be followed for completing local improvements shall be the same as township roads, as that provided in Divisions 1 and 3 of Article 9 of the Illinois Municipal Code. Division 1 of the Municipal Code provided for adoption of ordinances ordering local improvement made by general taxation, Ill. Rev. Stat. 1963, ch. 24, par. 9—1—2. Division 3 provided for adoption of a resolution describing the public property to be improved, (Ill. Rev. Stat. 1963, ch. 24, par. 9—3—3), and authorized the corporate authorities to contract with an engineer for services in preparing necessary plans and specifications, and to provide for payment of such services from special assessment proceeds, or from its general funds, or from other available public or private funds or combination thereof (Ill. Rev. Stat. 1963, ch. 24, par. 9—3—4). Like the 1965 statute, the predecessor 1963 statute was also invalid but its provisions differed to the extent that it cannot accurately be said plaintiff expressly agreed, by incorporation of that statute, to look only to special assessment proceeds for compensation. Aside from the reference to the 1963 Township Local Improvement Act, neither the employment contract nor the township resolution appearing in the record contain any express statement as to the source of payment or otherwise refer to a special assessment procedure. Thus such cases as *Hancock v. Village of Hazel Crest* (1943), 318 Ill.App. 170, 47 N.E.2d, 557, and *Village of Park Ridge v. Robinson* (1902), 198 Ill. 571, 65 N.E. 104, are inapplicable.

Having decided plaintiff is not precluded from recovery on the rationale that he agreed to be compensated only from a special assessment source, we must consider the general powers of a township and its electors under Ill. Rev. Stat. 1963, ch. 139, Township Organization, and jurisdiction over township roads as provided in Ill. Rev. Stat. 1963, ch. 121, Roads and Bridges Act. Neither litigant has referred to any provisions of the latter chapter, but we believe any general power authorizing plaintiff's employment, if it existed at all, must have flowed from the Road and Bridges Act.

It has been aptly said that there is duplication and some confusion between the Township Organization Act and the Road and Bridge provisions. (*People ex rel. Dennison v. A.T.S.F. Rwy.* (1934), 355 Ill. 424, 426, 189 N.E. 285). A township commissioner has been held to be a township officer entitled to payment from town funds, (*People ex rel. Olson v. A.T. & S.F. Ry. Co.* (1945), 389 Ill. 204, 209, 58 N.E.2d 916), but a township is a separate and distinct municipal corporation with no power or authority over roads, and the highway commissioner is a *quasi*-public corporation having jurisdiction over township roads. (*Western Sand Co. v. Town of Cornwall* (1954), 2 Ill.2d 560, 566, 119 N.E.2d 216; *Roesch-Zeller Inc. v. Hollembeck* (1955), 5 Ill.App.2d 94, 124 N.E.2d

662.) The implication of both acts read together is that the "highway commissioner" is both the office and the officer, he can sue and be sued. *Blazer v. Highway Commissioner of Marengo Twp.* (1968), 93 Ill.App.2d 89, 93, 235 N.E.2d 13.

Under the provisions of the Illinois Highway Code adopted in 1959 and continuing effective in 1963, each township was a road district for purposes of township road construction unless consolidated, (Ill. Rev. Stat. 1963, ch. 121, par. 6—102); the highway commissioner of each road district could determine the taxes necessary to be levied for road purposes and could construct and let contracts for the construction of roads within the district, provided a contract could not exceed $1,000 without written approval of the county superintendent of highways in case of road districts other than consolidated township road districts or without written approval of the highway board of auditors in case of consolidated township road districts (Ill. Rev. Stat. (1963), ch. 139, par. 6—201, par. 6—201.5 and par. 6—201.7).

A highway commissioner has been held without power to incur debt against a township for road construction except to the extent of tax funds on hand or tax levies made (*Austin-Western Rd. Machinery Co. v. Wetzel* (1931), 264 Ill.App. 254) and a person furnishing labor or materials to the highway commissioner of a town has no right to expect payment except from funds on hand or tax levies made (*Challacombe v. Anderson* (1912), 173 Ill. App. 144). Plaintiff here alleges in his complaint that taxes had been levied and collected during the three year period in question.

In reliance on the powers provided in Chapter 139, Township Organization, plaintiff calls our attention to the tax power of the township electors for the purpose of constructing roads within the town to the extent allowed by law as provided in Ill. Rev. Stat. (1963), ch. 139, par. 39.03 First. This taxing power, however, has been held not to give town voters independent or concurrent authority to levy any or all taxes for road construction, but to give them only authority to direct a levy of taxes in accord with specific provisions of the Road and Bridge law empowering the electors in town meeting to direct the levying of a tax under certain conditions and limitations (*Robinson v. McKenny* (1909), 239 Ill. 343, 349, 350). These conditions and limitations are found in Ill. Rev. Stat. (1963), ch. 121, par. 6—504, providing for an increased tax rate following a petition and special election or notice prior to the next regular township election. Power to determine the general tax levy for road purposes rested in the highway commissioner of the road district as provided in Ill. Rev. Stat. (1963), ch. 121, par. 6—501.

■■■ We conclude therefore, that the defense of *ultra vires* is available

to the Town of Algonquin as it had no specific or general corporate power to construct roads, but are compelled to observe that a highway commissioner did have general power to incur an obligation for the purpose of constructing township roads.

Affirmed and remanded.

MORAN, P. J., and LYONS, J., concur.